IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.D., a minor, *et al.*,<br><br>      Plaintiffs,<br><br>  v.<br><br>STATE OF CALIFORNIA HIGHWAY PATROL, *et al.*,<br><br>      Defendants.<br>                                         / | No. C 07-5483 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF DEFENDANTS' EXPERT, DR. EMILY KERAM** |

On March 13, 2009, the Court heard oral argument on defendants' motions for summary judgment and to dismiss for failure to join an indispensable party, and on plaintiffs' motion to exclude the testimony and report of defendants' expert, Dr. Emily Keram. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court DENIES defendants' motions for summary judgment and to dismiss for failure to join. The Court GRANTS plaintiffs' motion to exclude defense expert Dr. Keram as to the liability phase of the trial, and DENIES the motion as to the damages phase of the trial, without prejudice to plaintiff raising specific objections to specific areas of Dr. Keram's testimony at trial.

**BACKGROUND**

This case arises out of the shooting and killing of Karen Eklund (hereinafter, "decedent") by defendant Officer Stephen Markgraf on March 23, 2006. Plaintiffs, the decedent's minor children, bring this action for violation of their Fourteenth Amendment rights and for wrongful death.

At approximately 2:30 am on March 23, 2006, California Highway Patrol ("CHP") Officers

Markgraf and Johnson were notified by dispatch that a stolen car was being pursued into their territory by other CHP officers. The decedent was driving the stolen car.[1] Officers Johnson and Markgraf assumed the secondary pursuit position and a high speed chase through Oakland and San Francisco ensued. The chase ended in a residential San Francisco neighborhood when the decedent turned onto a dead end street and hit a chain link fence. Officers Johnson and Markgraf pulled up behind the stolen car, followed by two other CHP patrol vehicles. Six officers in total were present, and all got out of their vehicles and drew their weapons. Officer Markgraf shouted at the decedent to get out of her car but she refused to comply with his orders and responded by yelling obscenities at him. The decedent drove forward and backward three times, hitting the chain link fence and then ramming Johnson and Markgraf's patrol car. Officer Markgraf tried to open the stolen car by reaching inside to turn it off or put it in park, but he was unsuccessful. Finally, unable to convince the decedent to get out of the car or turn the car off, Officer Markgraf opened fire. He shot the decedent eleven times at close range through the passenger side window of the stolen car. As he started to reload, Sergeant Clare, another officer who was standing next to Officer Markgraf, told him to stop shooting. Although all of the other officers had their guns drawn, no one else fired a shot. The decedent was not armed.

Officer Markgraf testified that he shot the decedent because he feared that she would succeed in forcing her car past the CHP vehicles and run over the other officers at the scene. Plaintiffs contend that Officer Markgraf shot the decedent out of anger and frustration. There is conflicting testimony as to whether the car was moving or was stopped at the time Officer Markgraf shot the decedent. None of the other officers present testified that they felt that their lives were in immediate danger at the time of the shooting.

Plaintiffs originally filed their complaint against the State of California Highway Patrol and Officer Markgraf in state court; defendants removed the case to this Court on October 26, 2007. Plaintiffs filed their first amended complaint ("FAC") on March 6, 2008, alleging violations of their Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and state law wrongful death.

---

[1] Defendants emphasize the fact that the decedent was under the influence of methamphetamine and had a warrant out for her arrest at the time of the chase and shooting. However, none of the officers knew who the decedent was when these events occurred. Defendants only learned about her identity and drug use after her death.

Plaintiffs' first and second causes of action were survival claims for excessive force and deliberate indifference under the Fourth and Fourteenth Amendments. Plaintiffs' third and fourth causes of action alleged deprivation of familial relationship in violation of their Fourteenth Amendment right, and state law wrongful death. In the course of briefing the instant motions plaintiffs abandoned their first and second causes of action. Currently before the Court are defendants' motion to dismiss the remaining claims for failure to join indispensable parties and for summary judgment, and plaintiffs' motion to exclude the testimony and report of defendants' expert, Dr. Emily Keram.

**LEGAL STANDARDS**

**I.  Motion to Dismiss for Failure to Join an Indispensable Party**

Under Federal Rule of Civil Procedure 12(b)(7), a defendant may move to dismiss a complaint for failure to join a party under Rule 19. To find that an absent party is "indispensable," the Court must first deem the party necessary as a "person to be joined if feasible" under Rule 19(a)(1). *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). A 12(b)(7) motion to dismiss for failure to join will be granted only if the Court determines that the absent party is necessary, joinder is not feasible, and the party is "indispensable." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).

An absent party is necessary in two circumstances. First, if in the party's absence the Court is unable to accord complete relief to the parties present, the party is necessary. Fed. R. Civ. P. 19(a)(1). "Complete relief" in the context of Rule 19(a)(1) means that the existing parties can get meaningful recovery for their claims without multiple lawsuits on the same cause of action. *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir. 1983). Thus if a party can recover damages sufficient to compensate for his or her injuries from the defendants already in the action, additional parties that are also jointly and severally liable are not needed to afford complete relief. *See, e.g., Swanigan v. Amadeo Rossi, S.A.*, 617 F. Supp. 66, 67 (E.D. Mich. 1985) (holding that gun owner was not needed to afford complete relief when the gun manufacturer was already named as a defendant and plaintiff could recover all damages from manufacturer); *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984) ("[T]he 'complete relief' requirement concerns the ability of the already included defendants to fully satisfy any judgment awarded to plaintiff."). A party potentially subject to an indemnity action

3

arising from the claim is not necessary afford complete relief. *Bedel*, 103 F.R.D. at 80; *Hancotte v. Sears*, *Roebuck, & Co.*, 93 F.R.D. 845, 846 (E.D. Pa. 1982).

Second, an absent party is necessary if disposition of the case without that party would as a practical matter impair his ability to protect his interests, or would subject existing parties to multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(2); *see Aguilar v. Los Angeles County*, 751 F.2d 1089, 1089 (9th Cir. 1985) (interpreting and applying Rule 19(a)(2)).

If the Court concludes under Rule 19(a) that an absent party is necessary and that joinder is not feasible, it must then determine whether the action can continue in the absence of the necessary party. Rule 19(b) delineates several factors to be considered and requires that the action be dismissed if it appears in "equity and good conscience" that the absent party is indispensable. Fed. R. Civ. P. 19(b); *see Provident Tradesmens B. & T. Co. v. Patterson,* 88 S.Ct. 733 (1968)  (construing Rule 19(b)).

## II.     Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

4

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id*. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### III.    Motion to Exclude Evidence

Federal Rule of Evidence 402 provides that evidence which is not relevant is not admissible. "Relevant evidence" is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Ev. 401. Rule 403 further provides that even relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Unfair prejudice is the tendency "to suggest decision on an improper basis, commonly . . . an emotional one." *United States v. W. R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007) (*quoting* Advisory Committee notes to Rule 403).

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir.2002), *amended by* 319 F.3d 1073 (9th Cir.2003).

5

**DISCUSSION**

**I.      Motion to Dismiss for Failure to Join an Indispensable Party**

Defendants move to dismiss plaintiffs' complaint for failure to join the decedent's estranged husband, John Jay Eklund, and the County of Contra Costa ("County") as indispensable parties. Plaintiffs do not oppose the motion as it applies to the Fourth Amendment survivor claim, and withdraw that claim. Pl. Opp. at 1, Docket No. 48. However, plaintiffs oppose the motion as it relates to dismissal of their wrongful death claim. Thus, the Court must decide whether Mr. Eklund and the County are indispensable parties to the wrongful death claim.

**A.      Mr. Eklund**

Under California law, a wrongful death action is a statutory, rather than common law, claim. *Rutterberg v. Rutterberg*, 53 Cal. App. 4th 801, 807 (Ct. App. 1997). Only persons enumerated in California Code of Civil Procedure section 377.60 have standing to bring a wrongful death claim. While each heir has a personal and separate cause of action and a separate rather than joint interest, *Ruttenberg*, 53 Cal. App. 4th at 806-07, a wrongful death cause of action is considered joint and indivisible. *Helling v. Lew*, 28 Cal. App. 3d 434, 438 (Ct. App. 1972). An heir who brings a wrongful death action has "a mandatory duty to join all known omitted heirs in the 'single action' for wrongful death." *Ruttenberg*, 53 Cal. App. 4th at 808. Thus, missing heirs are necessary parties. *Id.*

Because Mr. Eklund is a missing heir and therefore a necessary party, the Court must decide whether joinder of Mr. Eklund is feasible, and, if not, whether he is an indispensable party. The Court finds that the joinder of Mr. Eklund is not feasible, because he has not filed a six-month statutory claim in this action and therefore is time-barred from participating. Although plaintiffs did not provide any evidence that Mr. Eklund had failed to file a statutory claim, defendants at the hearing confirmed that Mr. Eklund had in fact failed to file a statutory claim in this action. While defendants indicated that Mr. Eklund is hospitalized and suggested that the six-month statutory period for filing a statutory claim may have been tolled, defendants did not provide any evidence thereof, such as the dates of Mr. Eklund's hospitalization or the degree of his incapacitation. The Court therefore finds that joinder of Mr. Eklund is not feasible.

6

The Court further finds that Mr. Eklund is not an indispensable party. He is not eligible for relief due to his failure to timely file an administrative claim, and thus if any relief is awarded it could only go to the named heirs. Likewise, because Mr. Eklund cannot claim an interest in the action, any judgment rendered in his absence could not prejudice him. For the same reasons, his absence will not prevent the Court from awarding meaningful relief to the present parties. Mr. Eklund, therefore, is a necessary but not indispensable party. The action may proceed in his absence.

### B.     The County

Defendants claim that the County is an indispensable party because at the time of her death the decedent was subject to orders of the Contra Costa County Superior Court to reimburse the County for the cost of placing her children in foster care. Defendants argue that the County therefore has a superior right to proceed in the survival cause of action to recover the money it is owed by decedent's estate, and thus that absent joinder of the County plaintiffs' complaint must be dismissed. However, because plaintiffs have abandoned their survival action, defendants' argument is moot. Defendants do not contend that the County is an indispensable party to the wrongful death cause of action.

Therefore, for the reasons stated above, the Court DENIES defendants' motion to dismiss for failure to join an indispensable party.

## II.    Motion for Summary Judgment

### A.     Withdrawn Claims

As an initial matter, the Court notes that both parties have withdrawn certain claims and contentions in response to various motions. Specifically, plaintiffs have withdrawn their first and second causes of action, and thus no Fourth Amendment claims remain. Pl. Opp. at 1, Docket No. 50. Defendants concede that by removing this case to federal court, they have waived their 11th Amendment immunity argument. Defs. Reply at 14, Docket No. 58. Thus, the Court only addresses defendants' motion for summary judgment as it applies to plaintiffs' third cause of action for deprivation of familial relations in violation of the Fourteenth Amendment, and plaintiff's fourth cause of action for wrongful death.

7

### B. Fourteenth Amendment

Plaintiffs claim that defendants violated their Fourteenth Amendment right to familial relationships when Officer Markgraf shot and killed their mother. Defendants argue that summary judgment is appropriate as to this cause of action because plaintiffs have not advanced any facts showing that Officer Markgraf acted with a purpose to harm the decedent unrelated to law enforcement objective and that even if they had, Officer Markgraf is entitled to qualified immunity.

#### 1. Proper Standard

A substantive due process claim under the Fourteenth Amendment based on deprivation of the liberty interest arising out of familial relations may be asserted by the children of a person killed by law enforcement officers. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998). In order for plaintiffs to state such a claim, the officer's conduct in killing the decedent must shock the conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Where the situation allows for deliberation, a plaintiff must show deliberate indifference on the part of the defendant in order to demonstrate conscience shocking behavior. *See id.* at 853. Plaintiffs contend that this deliberate indifference standard is applicable here. However, when government actors must act quickly without the benefit of reflection, plaintiffs must show that defendants acted with "purpose to cause harm unrelated to the legitimate object of arrest" in order to establish behavior that shocks the conscience. *See id.* at 836. Defendants contend that this heightened "purpose to harm" standard applies here.

The Court agrees with defendants that the more stringent purpose to harm standard governs. Although Officer Markgraf had cornered the decedent on a dead end street, the decedent was still trying to escape and refused to get out of the car as requested by Officer Markgraf. The situation was fast-paced, even though the actual car chase had ended by the time Officer Markgraf shot the decedent. The entire series of events was "quickly evolving and escalating, prompting 'repeated split-second decisions.'" *Porter v. Osborne*, 546 F.3d 1131, 1139 (9th Cir. 2008) (*quoting Bingue v. Prunchak*, 512 F.3d 1169, 1176 (9th Cir. 2008)). The decedent acted evasively throughout the entire episode, and all the officers had to react quickly. Under these circumstances, whether Officer Markgraf's conduct shocks the conscience "must be evaluated under the purpose to harm standard of culpability." *Porter*,

546 F.3d at 1140.

### 2.     Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [ official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau*, 543 U.S. at 198.

To determine whether Officer Markgraf is entitled to qualified immunity, the Court must decide whether plaintiffs have identified facts sufficient to allow a reasonable jury to find that a constitutional violation occurred (here, whether Officer Markgraf acted with a "purpose to harm" the decedent unrelated to legitimate law enforcement objectives), and whether that right was clearly established at the time of the alleged violation.[2] *Porter*, 546 F.3d at 1136. The plaintiff bears the burden of proving the existence of a "clearly established" liberty interest at the time of the allegedly impermissible conduct. *Romero*, 913 F.2d at 627. Because the Court makes this determination in the context of a motion for summary judgment, it must view all facts and draw all reasonable inferences in favor of

---

[2]Under *Saucier v. Katz*, 533 U.S. 194, 201 (2001), district courts were required to conduct this inquiry as a rigid two-step analysis: first the court was required to decide whether a plaintiff had shown a constitutional violation, then, if the plaintiff satisfied that step, the court decided whether the right was "clearly established" at the time of the violation. However, the Supreme Court has recently decided that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

9

plaintiffs, the nonmoving party. *Brosseau*, 543 U.S. at 195, n.2.

Here, plaintiff has raised sufficient issues of fact to show that a constitutional violation may have occurred; specifically, that Officer Markgraf acted with a purpose to harm the decedent which was "unrelated to the legitimate object of arrest." *Lewis*, 523 U.S. at 836. Several facts indicate that under the totality of the circumstances a jury could find that Officer Markgraf was acting "for purposes other than legitimate law enforcement." *Porter*, 546 F.3d at 1141. For instance, some facts suggest that Officer Markgraf and the other officers were not in danger when Officer Markgraf shot the decedent. While Officer Markgraf testified that when he shot the decedent her car was moving and he feared she was going to run over other officers, Sergeant Clare testified that the car was stopped at the time the shooting happened. *See* Decl. of Tom Blake In Support of Motion for Summary Judgment, Exh. D at 15-16, Docket No. 39; Amended Decl. of Counsel In Support of Motion for Summary Judgment, Exh. G at 38; Docket No. 56. This disputed issue of fact goes directly to whether Officer Markgraf shot the decedent for a legitimate law enforcement reason or with the unrelated purpose to harm her. Plaintiff also points to several indications that Officer Markgraf shot the decedent out of anger and frustration instead of a legitimate law enforcement purpose, including the facts that Officer Markgraf had just been in a high speed chase, the decedent was yelling obscenities at him, the decedent had damaged his patrol car, Officer Markgraf fired eleven rounds, and Sergeant Clare felt compelled to tell him to stop shooting. Thus, it appears that plaintiffs here can make out a constitutional violation even under the heightened purpose to harm standard.

Because the Court has decided that plaintiff has proffered enough facts to allow a reasonable jury to find that Officer Markgraf acted with a purpose to harm the decedent unrelated to a legitimate law enforcement objective, it follows that that right was clearly established at the time of the alleged violation. Defendants could not credibly argue that Officer Markgraf had no idea that it would be unlawful for him to shoot the decedent with a purpose to harm her unrelated to legitimate law enforcement objectives. Plaintiffs cite several cases in support of the proposition that substantive due process prevents the government from engaging in behavior that shocks the conscience, and that acting with a purpose to harm that is separate from a legitimate law enforcement purpose qualifies as conscience shocking behavior even in a rapidly escalating situation. *See Lewis*, 523 U.S. at 846; *Bryan*

10

*County v. Brown*, 520 U.S. 397, 410 (1997); *Moreland*, 159 F.3d at 371. This is sufficient to show that plaintiffs carried their burden of establishing that the right in question was clearly established at the time of the alleged violation.

Defendants contend that *Brosseau* is dispositive on the qualified immunity issue. In *Brosseau*, the defendant officer shot the plaintiff as he attempted to flee from the police in his car. *Brosseau*, 543 U.S. at 194. The plaintiff survived the shooting and brought suit against the officer, alleging that the officer had used excessive force in violation of plaintiff's Fourth Amendment rights. *Id.* at 195. The district court held that the officer was entitled to qualified immunity. *Id.* The Ninth Circuit reversed, but the Supreme Court reversed and remanded, holding that the Ninth Circuit had erred by not considering whether the constitutional right was "clearly established" in the "particularized" sense that the officer was violating the plaintiff's Fourth Amendment right. *Id.* at 199. The Court stated that the appellate court should have considered whether the officer would have known she was violating plaintiff's Fourth Amendment right in the specific context the officer confronted: "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id.* at 200. Relying on *Brosseau*, defendants argue that plaintiffs have not provided authority showing that the asserted constitutional rights were clearly established in the specific situation Officer Markgraf confronted when he shot the decedent, and therefore that Officer Markgraf is entitled to qualified immunity.

The Court disagrees that *Brosseau* is dispositive here. While the *Brosseau* Court held that it was error not to inquire whether it was "clearly established" that the defendant violated the plaintiff's Fourth Amendment rights in a "more particularized sense," *Brosseau*, 543 U.S. at 199, the Court also noted that "in an obvious case," general standards can show that a right was "clearly established" at the time of an alleged violation, "even without a body of relevant case law." *Id*; *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (noting that in a case where an Eighth Amendment violation was "obvious" there did not need to be a materially similar case for the right to be clearly established). The instant case is more analogous to the "obvious" cases, and differs from *Brosseau* in crucial respects. For example, the officer in *Brosseau* knew that the plaintiff was a dangerous felon at the time she shot him, and this affected the "particularized situation" that she faced when she allegedly used excessive force. *Brosseau*,

11

543 U.S. at 196. In the instant case, Officer Markgraf did not know anything about the decedent when he shot her. Therefore, he was not in a situation where he knew he was dealing with a "disturbed felon." As the *Brosseau* Court notes, the dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199. In the instant case, plaintiffs have provided sufficient evidence to allow a reasonable jury to find that Officer Markgraf used deadly force with a purpose to harm unrelated to legitimate law enforcement objections. Certainly defendant disagrees with any such finding, and will argue its contrary. However, if such a finding were made it would amount to a clear violation of plaintiffs' well-established Fourteenth Amendment rights. The law is settled that acting with a purpose to harm unrelated to legitimate law enforcement objectives is a constitutional violation. *See Lewis*, 523 U.S. at 846; *Bryan County v. Brown*, 520 U.S. 397, 410 (1997); *Moreland*, 159 F.3d at 371.

Thus, the Court finds that summary judgment on the issues of the alleged Fourteenth Amendment violation and qualified immunity is improper. Plaintiffs have submitted evidence sufficient to allow a reasonable jury to find that Officer Markgraf acted with a purpose to harm the decedent, and that right was clearly established at the time of the shooting. Therefore, defendants' motion for summary judgment based on plaintiffs' failure to set forth facts in support of their Fourteenth Amendment claim and qualified immunity is DENIED.

**C.     Respondeat Superior**

Defendants concede that they have waived their 11th Amendment immunity argument with regard to plaintiffs' wrongful death claim. However, defendants also argue that plaintiffs' wrongful death claim must fail as a matter of law because it is directed only toward the State of California, and there is no respondeat superior liability for public entities under 42 U.S.C. § 1983. Furthermore, defendants claim that there is no basis for vicarious liability for a public entity under state law when the employee is not liable.

As an initial matter, the Court notes that while defendants raised this issue as an affirmative defense in their answer to plaintiffs' FAC, defendants did not assert this contention until their reply

1  brief. It is improper to raise new arguments for the first time in a reply brief because the other party
2  does not have a chance to respond. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n.6 (9th Cir.
3  2004); *United States v. Rearden*, 349 F.3d 608, 614 n.2 (9th Cir. 2003) ("We decline to consider
4  Rearden's argument . . . because it is raised for the first time in reply."); *Cedano-Viera v. Ashcroft*, 324
5  F.3d 1062, 1066 n.5 (9th Cir. 2003) ("We decline to consider new issues raised for the first time in a
6  reply brief.").

7  However, defendants' contention also fails on the merits. It is irrelevant that there is no
8  respondeat superior liability for public entities under 42 U.S.C. § 1983 because plaintiff brings the
9  wrongful death claim under California Code of Civil Procedure § 377.60, not under 42 U.S.C. § 1983.
10 Furthermore, while defendants are correct that a public entity is not vicariously liable under state law
11 if its employee is not liable, it is not clear from plaintiffs' complaint that they are *not* seeking to hold
12 Officer Markgraf liable for wrongful death. If plaintiffs are successful in proving that Officer Markgraf
13 is liable, the CHP may be liable under the doctrine of respondeat superior. *See* Cal. Gov. Code §
14 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee
15 of the public entity within the scope of his employment if the act or omission would, apart from this
16 section, have given rise to a cause of action against that employee or his personal representative.").
17 Therefore, the Court DENIES defendants' motion for summary judgment as to the wrongful death claim.

### III.   Motion to Exclude Expert Testimony

Plaintiffs move to exclude the testimony of defendants' psychiatric expert on the grounds that it is irrelevant and unduly prejudicial. The Court agrees with plaintiffs that the testimony would be irrelevant and unfairly prejudicial in the liability phase of the trial, but finds that it would be appropriate at the damages phase.

Dr. Keram opines about the decedent's psychiatric diagnosis, her capacity to fulfill her parental roles, the consequences of the decedent's abuse of plaintiffs, and the decedent's ability for future employability. These matters are not relevant in the liability phase because Officer Markgraf did not know who the decedent was when he shot her, and plaintiffs have not put the decedent's motive at issue. Even if somehow marginally relevant, these matters run the risk of unfairly prejudicing plaintiffs.

13

However, this expert opinion is relevant to damages because plaintiffs seek recovery for loss of society, comfort, and affection, and for the loss of services and economic support.[3]  Dr. Keram's testimony is directly relevant to the amount that plaintiffs will be able to recover for these claims, and thus, the testimony is proper in the damages phase of the trial.  Plaintiffs' motion to exclude Dr. Keram's testimony is thus GRANTED as to the liability phase of the trial and DENIED as to the damages phase of the trial.  This ruling is without prejudice to plaintiffs raising specific objections to Dr. Keram's testimony at trial.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motions to dismiss for failure to join an indispensable party and for summary judgment, and GRANTS plaintiffs' motion to exclude defendants' expert Dr. Keram as to the liability phase of the trial, but DENIES plaintiffs' motion as to the damages phase of trial.  (Docket Nos. 31, 32, and 37).

**IT IS SO ORDERED.**

Dated: March 17, 2009

SUSAN ILLSTON
United States District Judge

---

[3] Plaintiffs claim that they "are not seeking damages for lost economic support." Pl. Mtn. to Exclude Expert Testimony at 1, Docket No. 33. However, in their FAC plaintiffs specifically list the "loss of the services and economic support of the decedent" in their Statement of Damages. It is unclear whether plaintiffs are still pursuing these damages.

14