1 | Amitai Schwartz (State Bar No. 55187)
Moira Duvernay (State Bar. No. 233279)
2 | Law Offices of Amitai Schwartz
Watergate Towers
3 | 2000 Powell Street, Suite 1286
Emeryville, CA 94608
4 | Telephone:  (510) 597-1775
Facsimile:   (510) 597-0957
5 | attorneys@schwartzlaw.com

6 | Attorneys for Plaintiffs

7 | John Houston Scott (State Bar No. 72578)
Lizabeth N. de Vries (State Bar No. 227215)
8 | Scott Law Firm
1375 Sutter Street, Suite 222
9 | San Francisco, CA 94109
Telephone: (415) 561-9600
10 | Facsimile: (415) 561-9609
john@scottlawfirm.net
11 | liza@scottlawfirm.net

12 | Attorneys for Plaintiff, J.E., a minor

13 | Thomas P. Greerty (State Bar No. 85616)
917 La Juntas Street
14 | Martinez, CA 94102
Telephone:(925) 370-8400
15 | Facsimile: (925) 228-6825
tgreerty@tgreerty.com
16 |
Attorneys for Plaintiff, A.D., a minor
17 |

18 |
UNITED STATES DISTRICT COURT
19 |
NORTHERN DISTRICT OF CALIFORNIA
20 |

21 | A.D., a minor, et al.,                    )    Case No. C-07-5483 SI
                                           )
22 |          Plaintiffs,                    )
                                           )
23 |     v.                                  )    DECLARATION OF THOMAS P.
                                           )    GREERTY IN SUPPORT OF
24 | STATE OF CALIFORNIA                     )    PLAINTIFFS' MOTION FOR
     HIGHWAY PATROL, et al.,                )    ATTORNEYS' FEES AND
25 |                                         )    EXPENSES
              Defendants.                   )
26 |                                         )    Date:        Nov. 13, 2009
                                           )    Time:        9:00 A.M.
27 | _____ )    Place:       Courtroom 10
                                                Hon. Susan Illston
28 |

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI

I, Thomas P. Greerty, declare as follows:

1.    I am co-counsel for the plaintiffs in the above-captioned matter.  I make this declaration in support of plaintiffs' motion for attorneys' fees and expenses.

2.    I have been practicing law since 1979.  I am a member of the State Bar of California as well as the bar of the United States District Court for the Northern District of California.  I am also a member of the Oregon State Bar.  I have been in private practice since 1988.  My office is in Martinez, California.  I have litigated civil rights cases, with a focus on race, gender, and age discrimination.  My practice has also included wrongful termination, personal injury, criminal defense, and probate work.  Before I started my own practice, I worked as a deputy district attorney in Lane County, Oregon, for five and a half years.

3.     I have devoted a sizable portion of my legal career to representing the interests of minors.  I have represented minors in hundreds of cases, including a case involving sexual abuse committed by a Contra Costa County licensed foster care provider.  I am often appointed by courts as counsel and guardian ad litem for minors.  I have served as a judge pro tem in the juvenile division of the Contra Costa County Superior Court.  As a deputy district attorney in Oregon, I often focused on prosecuting crimes against children.  Prior to attending law school, from 1970 to 1972 I worked as a juvenile counselor for the probation departments of Contra Costa and Marin Counties.  Attached hereto and incorporated herein as Exhibit A is a copy of my resume.

4.    Shortly after March 23, 2006, the matter concerning the custody status of plaintiff A.D., a minor, came on regularly for hearing before the Superior Court of Contra Costa County.  At that time, Sue Casey, a court-appointed special advocate ("CASA"),  informed the court that A.D.'s mother, Karen Eklund, had been shot and killed by one or more law enforcement officers on March 23,2006.

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI                                                2

She requested that the court appoint an attorney to represent A.D.'s interests and investigate the matter.  John Christopher Weir, the attorney who had represented the decedent in her efforts to get custody of her children, suggested to the court that I may be willing to take the case.  He was aware that I had previously taken on difficult cases involving minors and allegations of harm inflicted by government agencies.  On April 13, 2006, pursuant to California Rule of Court 1448 (which was re-designated in January 2007 as Rule 5.662) the Contra Costa Superior Court issued an order appointing me as counsel and guardian ad litem.  A true and correct copy of the order is attached hereto as Exhibit B.

5.     At the time of my appointment, A.D. was living in foster care.  Her father was absent.  With her mother dead, she had no other family seeking custody of her.  She was only 12 years old.

6.     A.D. was devastated by the loss of her mother.  Even though she was not living with her mother at the time of her mother's death, A.D. had sincerely believed that they would eventually reunite.  A.D. was confused about how her mother died.  She had heard a lot of misinformation.

7.     I learned from media reports that early on March 23, 2006, one or more law enforcement officers had shot and killed Karen Eklund after she led officers on a high-speed chase that began in Contra Costa County and ended on a dead end street in San Francisco.  The press reported that Eklund was unarmed at the time she was killed and that San Francisco police were investigating the shooting.  Based on these facts, I felt a professional obligation to file a tort claim for wrongful death on behalf of A.D. with the California Victim Compensation and Claims Board in order to preserve her right to sue under state law.  I filed the claim on September 22, 2006.  On November 16, 2006, the Board rejected the claim.

8.     I investigated the circumstances of the shooting.  I contacted journalists who had covered the story of Karen Eklund's death.  I sought records

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI                                3

1   from the San Francisco medical examiner's office, the California Highway Patrol,

2   and the San Francisco Police Department.  In an effort to find eye-witnesses I

3   visited the scene of the shooting and talked to persons in the neighborhood where

4   the death occurred.

5        9.      During my investigation, I determined that Karen Eklund was shot

6   multiple times and killed by one or more officers of the California Highway Patrol

7   while stopped in her vehicle at a dead end street, boxed in by patrol vehicles,

8   unarmed, and with no means of escape.  I also became aware of unsympathetic

9   facts about the decedent.  I learned that she had a long criminal record and a

10  history of drug abuse.   She had been convicted of welfare fraud, possession of a

11  controlled substance, burglary, forgery, and resisting arrest.  She had been arrested

12  in the past for auto theft, receiving stolen property, manufacture and possession of

13  false checks with intent to defraud, identity theft, possession of a controlled

14  substance while armed, being under the influence of a controlled substance, and

15  battery on a police officer.  I knew that on the night she was killed, she was

16  driving a stolen car.  She also had an outstanding federal warrant for her arrest.

17  Nonetheless, given the circumstances of the shooting I came to the conclusion that

18  a wrongful death and civil rights case on behalf of A.D. would be supported by the

19  evidence.

20       10.     I knew from the outset that A.D.'s case would be both risky and

21  difficult.  I knew that the Highway Patrol would try to argue that its officers acted

22  reasonably in using deadly force, and I anticipated it would also try to raise an

23  immunity defense.  I also knew that defense counsel would try to focus the

24  attention of the court and a jury on the character of the decedent.

25       11.     In my experience, cases against public agencies are comparatively

26  more difficult to litigate than other types of cases.  These cases typically involve

27  good attorneys who raise a vigorous defense.  Because this was a case of an

28  officer-involved shooting, I knew that we had the added challenge of relying on

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI                                    4

witnesses to prove our case who were all fellow law enforcement officers.  I knew the officers who had witnessed the shooting would be sympathetic to the shooter.

12.    I also anticipated the complications that would inevitably arise from the status of my client as a ward of the court.  In my experience representing wards of the court, it is often difficult to reach them because they are frequently moved around, sometimes even out of the county.  In this case, I could not simply pick up the phone and discuss the case with A.D.  I knew that I would have to work within the foster care system which meant coordinating with a series of social workers, the CASA volunteer, and the foster care families. It is time consuming but necessary to work with all the members of this support network.

13.    When I committed to working on the case I knew it was difficult to gauge how much work I would be risking.  My practice is located in Contra Costa County and litigating this case in San Francisco would require additional travel time and inconvenience.   I also knew that a large recovery in this case was unlikely given the negative facts about the decedent and the fact that my client was already in long-term foster care when her mother died.

14.    I committed to representing A.D. in this extraordinarily difficult case because I believed it was in her best interest and the public interest.  A.D. had enjoyed a close emotional relationship with her mother despite their separation.  She was adamant about learning the truth about how her mother was killed.  She wanted justice for whoever was responsible for the killing.  I felt that this case would bring some solace to her, would provide her compensation, and would hold the highway patrol officers accountable for the death.

15.    On May 18, 2007, I filed the complaint in San Francisco Superior Court on behalf of A.D. for the wrongful death of her mother and for civil rights violations under 42 U.S.C. § 1983.

16.    To proceed with the state court suit, I had to take additional procedural steps to be appointed as guardian ad litem for A.D. by the San

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI

5

1  Francisco Superior Court.  The process was cumbersome and time consuming.

2  Attached hereto as Exhibit C is a true and correct copy of the application I filed in

3  San Francisco Superior Court on September 24, 2007.

4        17.    On October 26, 2007, the Highway Patrol removed the case to this

5  Court.  In the following weeks, I conferred with defense counsel regarding initial

6  disclosures, early settlement, ADR process selection, and formulating a discovery

7  plan.  In January 2008, the defendants provided plaintiffs with their initial

8  disclosure of witnesses and documents pursuant to Federal Rules of Civil

9  Procedure, Rule 26.  The list of witnesses included over 133 names.  Defendants

10 listed officers from the Oakland, San Francisco, Contra Costa, Marin, Solano, and

11 Golden Gate divisions and the Air Operations Unit of the California Highway

12 Patrol; officers from the police departments of Clayton City, Concord City,

13 Pittsburg City, and San Francisco; sheriff deputies from Contra Costa County;

14 members of the Golden Gate Division Critical Incident Investigation Team;

15 criminalists; medical examiners; members of the San Francisco County's District

16 Attorney's Office; members of the San Francisco Fire Department; doctors; and

17 civilian eye witnesses.  Defendants disclosed hundreds of pages of documents,

18 including  – among other things – crime scene reports, witness statements,

19 photographs, fingerprint reports, ballistic reports, laboratory reports, as well as

20 audio recordings.  I closely reviewed defendants' disclosures.  I had to sift through

21 the numerous documents to decipher who among the long list of disclosed

22 witnesses had the most relevant knowledge.  Next, I collaborated with opposing

23 counsel regarding the joint Case Management Conference statement.  I then

24 appeared before this Court at the February 8, 2008 Case Management Conference.

25       18.    In or around January 2008, John Scott joined this case as counsel for

26 J.E., plaintiff A.D.'s brother and the decedent's son.  We prepared to file a first

27 amended complaint which ultimately would add J.E. as a plaintiff and Officer

28 Stephan Markgraf as a defendant.  We had to take the procedural steps of applying

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI

6

to the Contra Costa County Superior Court for appointment of Sue Casey, a CASA volunteer, as guardian ad litem for J.E.  I attended the hearing regarding the guardian ad litem application on February 20, 2008.  On February 28, 2008, Mr. Scott and I filed a stipulation to allow plaintiffs A.D. and J.E. to file a first amended complaint.  On March 4, 2008, this Court granted plaintiffs leave to amend the complaint.  Plaintiffs filed the First Amended Complaint on March 5, 2008.

19.    John Scott and I conscientiously strategized about division of labor between the two of us to avoid duplication of work and to more efficiently litigate this case.  I had responsibility for dealing with procedural hurdles related to the complicated status of our clients as wards of the court.  For example, I reviewed the petition defendants filed in Contra Costa County Superior Court  for disclosure of juvenile court records pursuant to California Welfare and Institutions Code § 827.  I attended an August 6, 2008 hearing in the Superior Court on the matter to ensure that the court issued the appropriate protective orders related to our clients' records.

20.    I made a trip to Modesto and Merced, California, to spend several hours with plaintiffs A.D. and J.E.  I talked to them about what to expect at their upcoming depositions and familiarized them with the litigation process.  I met with Sue Casey to discuss the best interests of the minors.

21.    I spent a significant amount of time communicating with Sue Casey, social workers, and attorneys involved in managing the foster care of our clients.  I also prepared a petition and attended a hearing in Contra Costa County Superior Court on April 2, 2009 to have Sue Casey appointed as guardian ad litem for A.D.

22.    During discovery in this case plaintiffs took nine depositions, including Officer Markgraff, traffic reconstructionist Michael Mahoney, and seven additional highway patrol officers.  At the request of defense counsel, I deposed the seven additional officers in one day.  Preparing for these depositions required

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI                                    7

1  substantial time sifting through prior statements and reports and planning the most

2  effective and efficient approach to questioning these officers. The defendants took

3  the depositions of plaintiffs A.D. and J.E., as well as plaintiffs' expert, Roger

4  Clark.

5       23.    As the end of discovery approached, John Scott and I reviewed the

6  evidence we had gathered. We discussed strategy and possible expert witnesses.

7  Additional discovery from the defendants came late in the process, including an

8  important audio CD, requiring us to re-evaluate the evidence and re-strategize.

9  We worked closely with our expert, Mr. Clark. We also reviewed the report of

10  defense expert Dr. Emily Keram in which she provided opinions on the decedent's

11  psychiatric state and capacity to parent, among other things. I consulted with John

12  Christopher Weir, the attorney who had represented Karen Eklund in her efforts to

13  get custody of her children before she was killed. Mr. Scott and I agreed that we

14  needed to file a motion to exclude the testimony and report of Dr. Keram.

15  Plaintiffs filed the motion on February 6, 2009.

16       24.    On the same day plaintiffs filed their motion, defendants filed two

17  motions. First, defendants moved to dismiss for failure to join indispensable

18  parties, arguing that plaintiffs failed to join the decedent's estranged

19  husband, John Jay Eklund, and the County of Contra Costa as indispensable

20  parties. Second, defendants moved for summary judgment on several grounds,

21  including that Officer Markgraf was entitled to qualified immunity. We reviewed

22  these motions and the number of exhibits in support of these motions. Mr. Scott

23  drafted the oppositions to both motions. I reviewed drafts, provided input, and

24  attended oral argument held before this Court on March 13, 2009. The Court

25  granted in part and denied in part plaintiffs' motion to exclude the testimony of

26  Dr. Keram. The Court denied defendants' motions.

27       25.    Over the course of this litigation, John Scott and I spent significant

28  time in good faith attempts to settle. This time included drafting an ENE

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483 SI

8

1  statement and preparing for the ENE session before Robert T. Fries on June 27,

2  2008 and briefing and preparing for a court-ordered settlement conference held on

3  March 20, 2009.

4      26.    When the case failed to settle, we prepared for trial.  Mr. Scott and I

5  finalized witness lists, complied exhibits, prepared the pretrial conference

6  statement, prepared motions in limine, and attended the pre-trial hearing on April

7  14, 2009.  I spent many hours in the days preceding trial reviewing deposition

8  transcripts, comparing expert reports, researching model jury instructions, and re-

9  examining the medical examiner's report and photos of the scene of the shooting.

10      27.    Trial preparation in this case also required that I work closely with

11  Sue Casey and the support network of social workers to provide the children with

12  the emotional support needed to survive the often-retraumatizing experience of

13  testifying in front of a judge and jury.  This case was particularly traumatic for

14  these plaintiffs because of the violent circumstances surrounding the killing of

15  their mother.  A.D. remained especially emotional about losing her mother.

16  Before trial I had to confer with the children about sensitive issues involving their

17  mother, allegations against her, and her death.  I also took extra measures to

18  coordinate the children's travel to San Francisco for trial and their lodging.  I

19  wanted to ensure their comfort and see that their needs were met.

20      28.    The liability phase of the jury trial commenced April 27, 2009, and

21  lasted for three days.  John Scott and I divided the trial work.  I handled the

22  examination of fact-witnesses; he conducted the examinations of the experts and

23  the defendant Markgraff.  We also split up opening and closing arguments.

24  Twelve witnesses testified in total and approximately 50 exhibits were introduced.

25  On May 1, 2009, the jury returned a special verdict in favor of the plaintiffs,

26  vindicating their rights for the loss of their mother.  The bifurcated damages phase

27  of the trial began on May 6, 2009.  On May 7, 2009, the jury awarded each

28  plaintiff $30,000 in damages.  On May 8, 2009, this Court entered judgment in

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI                                    9

1  favor of the plaintiffs against defendant Markgraf.

2      29.    On May 18, 2009, defendant Markgraf filed a motion for a new trial

3  as well as a motion for judgment as a matter of law raising many of the same

4  issues litigated during the pre-trial motions.  Under my supervision, my associate,

5  John P. Greerty, assisted in the drafting of plaintiffs' opposition to the motion for

6  a new trial.  I conferred with him and reviewed drafts.  John Scott's office

7  prepared plaintiffs' opposition to the motion for judgment as a matter of law.

8  Plaintiffs filed their oppositions to these motions on June 8, 2009.  On June 23,

9  2009, this Court denied both motions.

10      30.    I seek an hourly rate of $600.00 for my time in this case.  I believe

11  that this rate is at or below the rates currently charged in the Northern District of

12  California in comparable civil rights matters and other complex litigation by

13  attorneys of similar experience and skill who charge hourly fees billed on a

14  monthly basis.  I also believe this rate is reasonable in light of the unique

15  challenges that we faced in this extraordinarily difficult case.

16      31.    Attached hereto as Exhibit D is a true and correct summary of the

17  time I expended on the merits of this case.  The summary is based in part on

18  contemporaneous time records, with some reconstruction based on a review of

19  records that revealed I had not initially recorded my time for various phone calls,

20  correspondence, and conferences.   As set forth in the summary, I have spent 425.4

21  hours on this case through July 13, 2009.  I am not seeking compensation for time

22  I spent assisting with this fee motion.

23      32.    I seek $175 per hour for the services of my associate John P. Greerty.

24  He is a 2008 law graduate of Ave Maria School of Law in Ann Arbor, Michigan.

25  He is admitted to practice law in California and recently passed the bar exam in

26  Florida.  A copy of his resume is attached hereto and incorporated herein as

27  Exhibit E.

28  //

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No. C-07-5483  SI
10

1      33.    John Greerty spent 34.6 hours assisting in the preparation of

2  plaintiffs' opposition to defendant's motion for a new trial. Attached hereto as

3  Exhibit F is a true and correct summary of his time. The summary is based on

4  contemporaneous time records. I am not seeking compensation for the paralegal

5  services John Greerty provided during the trial in this case.

6      34.    To date, I have received no compensation for my work or for the

7  work of my associate on this case. I have not been reimbursed for any expenses

8  incurred by or billed to my office.

9      35.    I seek compensation for expenses in connection with this case in the

10  amount of $1,006.71. A summary of the claimed expenses is attached hereto as

11  Exhibit G. This summary was compiled from receipts and invoices in my files and

12  is a true and accurate account of the expenses incurred by and/or billed to my

13  office in connection with this case.

14

15      I declare under penalty of perjury that the foregoing is true and correct.

16  Executed at New York, New York this _28_ day of August, 2009.

17

18                                    Thomas P. Greerty

19

20

21

22

23

24

25

26

27

28

Declaration of Thomas P. Greerty in Support of
Plaintiffs' Motion for Attorneys' Fees and Expenses
Case No C-07-5483 SI          11