EDMUND G. BROWN JR.
ATTORNEY GENERAL OF CALIFORNIA
TOM BLAKE, STATE BAR NO. 51885
JOHN DEVINE, STATE BAR NO. 170773
DEPUTY ATTORNEYS GENERAL
455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004
TELEPHONE: (415) 703-5506
FAX: (415) 703-5480
E-MAIL: TOM.BLAKE@DOJ.CA.GOV
    ATTORNEYS FOR DEFENDANT OFFICER STEPHEN
MARKGRAF

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| A. D., a Minor, et al.<br><br>Plaintiff,<br><br>v.<br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | C-07-5483 SI<br><br>**DECLARATION OF GARY GREENFIELD IN OPPOSITION TO MOTION FOR ATTORNEYS FEES**<br><br>Date:  November 13, 2009<br>Time:  9:00 a.m.<br>Judge    Hon. Susan Illston<br>Trial Date      April 22, 2009<br>Action Filed:  May 18, 2007 |

1

Decl. of Gary Greenfield in Opposition to Mot. for Attorney's Fees                    Case No. C-07-5483 SI

Declaration of Gary Greenfield

I, Gary Greenfield, declare:

1.  I am making this Declaration in support of the defendant's Opposition to plaintiffs' Motion for Attorneys' Fees and Expenses ("Motion"). I have personal knowledge of the matters set forth in this Declaration and, if called upon to testify, I could and would competently testify thereto.

Background

2.  I am the founder of Litigation Cost Management (LCM), based in Oakland, California. LCM is in the business of consulting regarding legal fee-related issues. As part of our business, we regularly conduct analyses of legal and expert witness fees in litigation regarding the reasonableness and appropriateness of time, fees, rates and expenses being sought, and consult with clients regarding how to manage their outside litigation more effectively and efficiently.

3.  LCM works with both law firms and clients of law firms in undertaking its analyses and consulting about effective litigation management. Our clients include law firms, businesses, public entities and agencies, and institutions (such as universities.)

4.  Since LCM was founded in January, 1991, I have conducted several hundred analyses of the legal fees and expenses in cases of various types and sizes. These have included individual and multi-party suits, as well as class actions. The cases have included the full range of civil litigation, including employment, intellectual property, real property, False Claims Act, bankruptcy, breach of contract, securities, antitrust, environmental, insurance bad faith, discrimination, disability, civil rights, constitutional law, inverse condemnation,

Decl. Gary Greenfield–Opp. Mot. Fees          1

personal injury and products liability cases. I have myself been personally involved in, conducted analysis in and supervised each of these analyses. A number of the projects have been post-trial or post-settlement attorneys' fees applications or motions.

5. As part of my work on these projects, I have prepared and submitted numerous reports on attorneys' fees issues, both on behalf of parties submitting fee applications and on behalf of law firms or clients opposing them. I would estimate that I have prepared over a hundred such reports.

6. I have also qualified and testified previously as an expert witness in litigation (both in court and in arbitrations) regarding legal fees, again both on behalf of parties seeking to recover their attorneys' fees and parties opposing requests for attorneys' fees. I have testified a minimum of eight times and been designated as an expert witness at least thirty times.

7. I was also appointed a Special Master to analyze the fees and expenses of various law firms and experts in the Golden Eagle Insurance Company conservation proceeding before the San Francisco Superior Court. A major issue in that analysis was the appropriateness of the rates being sought.

8. Prior to starting LCM in January, 1991, I was a partner in the law firm of Shartsis, Friese & Ginsburg in San Francisco, California, where I was a litigator for fifteen years, having become a partner in the firm in 1981. During my career at my former law firm, I handled general commercial litigation, including the full gamut of litigation from pre-filing preparation and negotiations through trials and appeals. I handled litigation of varying types, including breach of contract, constitutional law, securities, fraud, bankruptcy litigation, intellectual property, unfair competition, and civil rights litigation. I represented both plaintiffs and defendants. I handled both contingency cases and cases

Decl. Gary Greenfield–Opp. Mot. Fees          2

where we were compensated on an hourly basis. I graduated from the Boalt Hall School of Law in 1975 and received my undergraduate degree from Stanford University in 1971. A copy of my Resume is attached hereto as Exhibit 2.

9.    As part of my work, I also consult with law firms and clients of law firms regarding law firm billing practices, effective litigation management, and legal bill auditing procedures. I have lectured extensively and conducted numerous seminars for clients and law firms in each of these areas.

10.    A fundamental part of LCM's work is to review and analyze bills and time entries from law firms, which virtually always entails obtaining the rates being charged for the various billers in the firms. We have accordingly acquired a large quantity of information regarding the rates being charged by dozens of law firms of various sizes and types (ranging from solo practices to large, international firms) and hundreds of lawyers of various expertise and levels of experience. We maintain and update that information on an on-going basis in a database, and I frequently review it. A major portion of our work involves San Francisco Bay Area law firms.

11.    Because it is integral to my work, in addition to reviewing rates in cases I work on, I also review materials filed in cases other than those I am working on, review judicial decisions which discuss rates sought and awarded, as well as other legal-fee related issues, and review literature and rate surveys on rates being charged by law firms.

12.    As a result of my work described above, I am familiar with the range of rates being charged by lawyers in the various types of civil litigation, including civil rights litigation, in the San Francisco Bay Area, which contains the overwhelming number of firms and lawyers in the Northern District of California, the forum of this action and the relevant area for purposes of determining the appropriate rates of the billers

Decl. Gary Greenfield–Opp. Mot. Fees        3

13.   I have been retained in this case by defendant to analyze the time entries filed in support of the Motion with respect to whether the time billed and rates sought are appropriate and reasonable. The time entries reflecting the work done are attached as Exhibits to the Declarations filed in support of the Motion. Attorneys' fees are sought for the time of four billers, Thomas Greerty, John Greerty, John Scott, and Elizabeth de Vries, with respect to the underlying case and the Motion, and for Amitai Schwartz and Moira Durvernay, counsel for plaintiffs with respect to the Motion.

Executive Summary

14.   Based on my review of the file and analysis of the time entries, various adjustments should be made to the time billed and rates sought to arrive at the lodestar in this case. My review is directed to analysis of the lodestar requested and not to the issues of success on the merits or application of any multiplier. The following is a brief summary of my conclusions which are quantified on Exhibit 1 hereto.

   a.   For the period until April 2, 2009, during which time Thomas Greerty was both Guardian Ad Litem for A.D. and counsel to himself as Guardian Ad Litem for A.D., Mr. Greerty billed 244. 2 hours and $146,520 fees, which are being deducted;

   b.   Mr. Greerty's remaining hours should be reduced by 50% because of evidence that he overbilled his time;

   c.   I am applying the 2008 Ninth Circuit Equal Access to Justice Act hour rate for attorneys of $172.85 to Mr. Greerty's remaining hours;

Decl. Gary Greenfield–Opp. Mot. Fees          4

d.      The rate to be applied to Mr. Scott's hours for his senior level work is $500 per hour;

e.      Time billed by Mr. Scott for work that could have been undertaken by a more junior lawyer should be adjusted to a rate of $300 per hour.

15.    After the foregoing adjustments are made (no adjustments having been made to the time or rates of John Greerty or Elizabeth de Vries), the resulting lodestar is $213,925.21. [1]

Materials reviewed

16.    I have reviewed the following materials:

a.      The Motion and the materials filed in support thereof;

b.      The letter of August 26, 2009, from counsel for defendant seeking certain documents, the letter from counsel for the plaintiffs and the materials supplied by counsel for the plaintiffs in response to that letter; and

c.      The pleadings and correspondence (including emails) in defendant's counsel file related to the case, including all the materials attached hereto as exhibits.

---

[1] I have not been asked to express any opinion regarding the degree, if any, the fees should be reduced for lack of success or regarding the application of a negative or positive multiplier to the lodestar.

Decl. Gary Greenfield–Opp. Mot. Fees                    5

Database creation–analyses and reports

17.    To assist in the analysis of the Motion, as is our common practice, we created a database of the time entries provided by plaintiffs in support of the Motion. [2]

18.    We then generated various reports from the database to assist me in my analysis. The database and spreadsheet analyses attached to this Declaration were generated from the

_____

[2] The process for creation of the database of the time and expense entries in this case was as follows:

a.    LCM created an electronic computer file of the time and expense entries provided by plaintiffs. The information put into the computer file included the work date, the identity of the biller undertaking each task or group of tasks on the bills, the descriptions of the work undertaken, the time spent, the amount billed, as well as other information from the time entries provided.

b.    We then checked the computer file using various analyses and tests to verify that it accurately reflected the time entries and expenses provided. At times, we corrected obvious misspellings or typographical errors.

c.    Once we determined that the information input was accurate, the file was converted into a database "table," and we constructed our database from that table and various analyses we undertook.

Decl. Gary Greenfield–Opp. Mot. Fees            6

database we created. Attached as an Appendix hereto for reference purposes are reports from the database including 1) all of the time entries of each biller organized by date (App. A) and 2) all of the time entries organized by biller (App. B). When I refer to a biller and a date, the reference is to a time entry that can be found either in the Appendix or in an Exhibit which is part of the discussion of that time entry. Each time entry has a unique identification number which is the last number in the right hand column in each database report.

Approach to analysis

19.    A legal fee analysis or "audit" has various functions. It is designed to determine whether time and expenses were appropriate to bill and reasonable in amount and to quantify various areas of the time and expenses. [3] In analyzing and assessing legal fees and expenses, the approach I take is to analyze various areas: whether the time billed appears to accurately reflect the time actually worked; whether the activities and expenses billed were appropriate to bill or not (for example because the time was for an activity that is generally subsumed in law firm overhead or was unnecessarily duplicative); whether the time spent and fees billed appear reasonable in amount; and, in certain cases, whether the time billed, even if otherwise appropriate or reasonable, was for work for which attorneys' fees are not recoverable in the particular case.

---

[3] In Hensley v. Eckerhart, 461 U.S. 424 (1983), the still seminal case in the area of legal fee analysis, the Supreme Court stated that a court reviewing a fee request should exclude hours that were not "reasonably expended," 461 U.S. at 434, noting that"counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id.

Decl. Gary Greenfield–Opp. Mot. Fees           7

20. Because of the nature of legal bills, it is impossible to evaluate each time entry against some objective source of information regarding the time billed. Thus, as in other types of "audits," a legal bill audit or analysis, as I conduct them, does not involve analyzing every entry with regard to whether the time appears reasonable, on the one hand, or overbilled, on the other. [4] Rather, it involves analyzing the time entries for activities or projects where one can evaluate the time, such as by looking at the time billed for preparation or review of certain types of work product where an experienced lawyer can say with confidence whether the time billed appears accurate and reasonable. If one finds that a substantial portion of the entries one can evaluate appear overbilled, it is reasonable to conclude that the time is overbilled in general. In undertaking this analysis, I am not looking for isolated instances of possible overbilling, but rather to determine whether there appears to exist a pattern or practice of overbilling.

21. A preliminary matter that needs to be addressed is the practice by plaintiffs' counsel of "block-billing," the combining of the time for multiple, discrete activities into one time entry. A portion of plaintiff's counsel's time entries were block-billed. Block-billing is a common practice among law firm, but it is well-recognized in the legal industry that block-billing interferes with analysis of the time entries because it makes it difficult and often impossible to identify the actual time billed for the discrete tasks within the block-billed entry. Certain of the analyses I have undertaken have required me to analyze some of the block-billed entries, and, because of the block-billing, I have had to estimate the time for the activity whose time I am quantifying in those analyses by allocating the time within the block-billed entries among the various activities. The amount of time I

---

[4] I use the term "overbilled" to indicate that the time billed for particular work appears to be substantially more than what was actually worked or than reasonably should have been billed even if the time billed was actually spent on the task.

Decl. Gary Greenfield–Opp. Mot. Fees          8

allocated to the activity in the block-billed entry which is the subject of each analysis is indicated in the column entitled "Alloc. Hrs."on the Exhibit, and the total time and fees allocated to the activities which are the subject of the analysis are indicated on the last page of each Exhibit.

Background of the litigation

22.   This litigation is a civil rights/wrongful death action brought by the minor children of a woman who was shot to death by a Highway Patrol officer after a high speed car chase. The children did not live with their mother; they had been in foster care since 2000.

23.   Thomas Greerty was appointed by the Contra Costa Superior Court on April 13, 2006 as counsel and as Guardian Ad Litem to investigate allegations of the wrongful death of one of the ultimate plaintiffs, A.D.  Subsequently, suit was commenced as a state court action by Mr. Greerty, acting both as Guardian Ad Litem and as counsel for himself as Guardian Ad Litem for A.D., in San Francisco Superior Court on May 18, 2007. [5] The fact that there was a second child was apparently not known to Mr. Greerty until some time later. Mr. Greerty first consulted with Mr. Scott regarding the case on March 17, 2007 (at least that was the first time entry reflecting any consultation.) App. A, T. Greerty 3-17-07 entry.  The case was removed to the United States District Court for the Northern District of California on October 26, 2007.  Mr. Greerty then contacted Mr. Scott who became involved in the case, Declaration of John H. Scott in support of the Motion ("Scott Declaration"), ¶16, and Mr. Scott first billed time on the case in January, 2008.  App. A, Scott 1-17-08 entry.  At some point, it became known that there was a second child (J.E.).

_____

[5] Contra Costa County appears to have a program for appointment of Guardian Ad Litem, and Mr. Greerty may be compensated for his services thereunder in some way, separate from any compensation he may receive for his work in this litigation.

Decl. Gary Greenfield–Opp. Mot. Fees          9

Sue Casey was appointed Guardian Ad Litem for J.E. on February 20, 2008, and Mr. Scott was appointed counsel for Ms. Casey as Guardian Ad Litem for J.E. J.E. was added as a plaintiff when the First Amended Complaint was filed on March 5, 2008. Although, as stated above, Mr. Greerty had been appointed Guardian Ad Litem for A.D., on April 2, 2009, Ms. Casey was also appointed Guardian Ad Litem for A.D. Declaration of Thomas Greerty in support of the Motion ("Greerty Declaration"), ¶ 21.

24. The case involved a relatively small amount of discovery. There were no interrogatories or requests for admissions. Documents were produced, consisting of the California Highway Patrol Shooting Investigation regarding the incident, the children's Juvenile Court file, and some compact discs and audio tapes. There were depositions taken of the children, seven Highway Patrol officers, and two experts. There were several motions: defendant's Motion for Summary Judgment and Motion to Dismiss for Lack of An Indispensable Party (which were denied but ultimately resulted in the abandonment before trial of all of plaintiffs' claims but one); plaintiffs' Motion to Exclude Testimony and Report of Defendant's Expert (which was partially successful); and various post-trial motions by defendant (which were denied.) There were no discovery motions.

25. The case went to trial, and a jury verdict awarding each child $30,000 was returned.

26. The case was not complex from either a factual or legal standpoint. Other than those addressed in the motions referred to above, there were few legal issues (at least there was relatively little legal research billed for other than the research that went into the various motions filed.) I have reviewed the motions filed before trial; they did not raise particularly complex or novel issues. [6]

---

[6] I am not ignoring the problems in bringing lawsuits against the police, as discussed in the plaintiffs' Declarations in support of the Motion. However, it did not appear that the case

Decl. Gary Greenfield–Opp. Mot. Fees            10

Analysis

27.  I have reviewed the time entries and materials filed in support of the Motion with respect to each of the billers. In my opinion, adjustments are necessary to both the rates and time billed by certain of the billers to arrive at the appropriate rates and reasonable and appropriate time billed for calculating the lodestar. A summary of the adjustments which I have made are set out on Exhibit 1. An explanation of how I arrived at the various adjustments is set out in the Summary of Adjustments section at the end of this Declaration. An explanation of why I believe the adjustments are necessary follows.

Thomas Greerty rate and time billed

Thomas Greerty hours and fees while Guardian Ad Litem and counsel

28.  As in initial matter, at the request of counsel for defendant, we have quantified the time and fees billed by Mr. Greerty [7] until April 2, 2009, when Ms. Casey was appointed Guardian Ad Litem to A.D. because, until that time, Mr. Greerty was both Guardian Ad Litem and counsel to himself as Guardian Ad Litem. Up until that time, Mr. Greerty billed 244.2 hours and $146,520 (at his requested rate of $600 per hour.) See Exhibit 8 hereto.

---

was complex legally or factually or presented unusual or novel litigation problems.

[7] Unless it appears otherwise from the context, if I refer to "Mr. Greerty," I am referring to Thomas Greerty. John Greerty was another biller on this case, but only for a limited amount of time and work.

Decl. Gary Greenfield–Opp. Mot. Fees          11

Thomas Greerty's Market Rate

29.    The rate to be applied to a billers' time is the rate charged in the particular market (here, the San Francisco Bay Area) for comparable legal services (in terms of complexity, not necessarily subject matter) by lawyers similar to the particular biller in terms of experience, expertise, skill and reputation. "Experience"–years in practice–is not the only relevant consideration. If that were not the case, all billers in a geographic location who have been in practice the same number of years would all have the same market rate.

30.    The party seeking fees has the burden of proof on the issue of the appropriate rate to apply within the market. The type of evidence normally supplied on a motion for fees to support a particular rate is evidence that the rate sought on the Motion is the biller's normal rate charged to clients paying on an hourly basis (where such information exists); orders in other cases awarding rates to the same billers; evidence of the rates charged for comparable work by lawyers similar to the biller in terms of skill, expertise and reputation; declarations from other practitioners who are familiar with both the market and the biller and who attest that the rate being sought for the biller is comparable to the rate charged by lawyers of similar experience, skill, expertise and reputation in the market; and data on rates from various sources, such as articles appearing in the media and rate surveys.

31.    With regard to Mr. Greerty's level of experience, according to his Declaration and his Resume attached thereto as Exhibit A, he has been in general practice since 1979 (i.e., 30 years), other than six years which he spent as a Deputy District Attorney. Greerty Declaration, Ex. A. His practice has included wrongful termination, personal injury, criminal defense, civil rights, discrimination and probate work. Greerty Declaration, ¶ 2.

32.    As noted above, years of experience is only one factor that is relevant to the market rate

Decl. Gary Greenfield–Opp. Mot. Fees          12

for a biller, and there is no single correct rate for someone with 30 years of experience. In fact, rates for lawyers of the same experience level vary with the factors of the type of practice and nature of the firm playing the most important role in determining rates within the various experience levels. Thus, lawyers at large firms and boutique firms tend to have the highest rates at the same experience levels.

33.   Because there is in fact a wide range of rates for lawyers of Mr. Greerty's experience level in the San Francisco Bay Area, the other factors referenced--the particular biller's skill, expertise and reputation; fees charged fee-paying clients (where there are any) and awarded in other cases; rates charged by comparable lawyers for comparable work; and, in the view of some courts, the size of the biller's law firm[8]/are critical factors in determining a biller's market rate in a fee-shifting case.

34.   However, as indicated above, there is no information supplied regarding Mr. Greerty other than with respect to his years of experience-- there are no facts or other information provided in any of these materials regarding Mr. Greerty's skill, expertise and reputation,

---

[8] Some courts take into account whether the biller is from a small firm or large firm, on the theory that larger firms charge and are therefore entitled to higher rates. There is a split of authority on this issue. However, as discussed later in the text, to the extent a lawyer who is a sole practitioner or in a small firm is seeking a rate in a case comparable to that charged at a large firm for a lawyer of comparable seniority (as is the case here), the fact that the lawyer undertakes work that at a larger firm would be billed by a more junior lawyer at a lower rate (which in part justifies the higher rates charged by larger firms for senior lawyers) requires an adjustment to the rate to be applied in a case so that the solo practitioner or small firm lawyer is not being overcompensated by being paid for junior lawyer work at senior lawyer rates.

Decl. Gary Greenfield–Opp. Mot. Fees          13

or rates charged by him or awarded to him in other cases. There is no information provided of Mr. Greerty's billing and receiving $600 per hour from fee-paying clients, orders granting him $600 per hour or anything comparable, or significant cases in which he was lead counsel, or otherwise involved. Nor are there declarations from other lawyers indicating that they are familiar with Mr. Greerty's work and his reputation, level of skill and expertise and that the market rate for Mr. Greerty for litigating this type of case is $600 per hour. There is simply no evidence whatsoever supplied to support the requested rate other than Mr. Greerty's 30 years of experience. 9/

35.    In support of the requested rates, plaintiffs provide the Declaration of Steven L. Mayer ("Mayer Declaration") and the Declaration of Richard M. Pearl ("Pearl Declaration") which discuss rates billed during various years at various firms and rates awarded in various cases. Plaintiffs also request that the Court take judicial notice of fee applications and Orders involving fees sought by several firms in the In re Heller Ehrman LLP bankruptcy case currently pending in the Northern District of California. These materials reflect rates charged in various cases (but often there is no indication of the nature of the

_____

[9] This evidence is absent even though plaintiffs' counsel on this Motion, who are experienced fees counsel, interviewed Mr. Greerty and prepared his Declaration, as indicated in their own time entries, so, if this type of evidence were available, presumably it would have been included. Mr Greerty himself states that a rate of $600 per hour is at or below the rate charged in the Northern District of California in comparable civil rights matters and other complex litigation by lawyers of similar experience and skill who bill on an hourly basis. Thomas Greerty Declaration, ¶ 30. However, in addition to the fact that he supplies no basis or foundation for that opinion, normally a biller's own statement regarding his level of skill (or reputation) is alone not sufficient to support a requested rate.

Decl. Gary Greenfield–Opp. Mot. Fees            14

case) and by billers in various law firms at various levels. However, these Declarations do not supply any information about Mr. Greerty. There is no evidence provided to indicate that Mr. Greerty is similar to the lawyers listed in plaintiffs' Declarations in terms of his skill, expertise and reputation. The fact that other lawyers with 30 years of experience may command $600 per hour (or higher) does not itself indicate that $600 per hour is the appropriate rate in the market for Mr. Greerty in this case. [10]

36.  Based on Mr. Greerty's apparent lack of substantial experience in this type of litigation (at least there is nothing in his Declaration or Resume to indicate that he has substantial experience in federal court civil rights cases ),[11] it appears that Mr. Scott was brought into the case once it was removed to federal court because Mr. Greerty felt that Mr. Scott had the necessary experience to litigate the case. Since Mr. Greerty felt the need to bring in a more experienced litigator to participate in the case, it would not be appropriate to compensate him at the senior rate which he seeks (and the same rate sought for Mr. Scott) simply because he also has 30 years of experience as a lawyer. Notably, both Mr. Pearl

---

[10] It appears that plaintiffs are relying solely on their characterization of this litigation as an extremely difficult, complex case "comparable" for purposes of a market rate analysis with the complex litigation the lawyers and firms described in plaintiffs' Declarations and Request for Judicial Notice regularly engage in. However, this litigation does not appear to have been a particularly complex piece of litigation–with relatively little discovery, motion practice or complex factual or legal issues. Civil rights cases clearly can be complex, but this does not appear to have been one in terms of the factual or legal issues involved.

[11] He indicates that he has handled civil rights cases of various types, but there is nothing to suggest a particular level of expertise of the type included in the Declarations of the other billers for whom fees are sought.

Decl. Gary Greenfield–Opp. Mot. Fees          15

and Mr. Schwartz are seeking $600 per hour for their time as well, but they supply information reflecting their skill and expertise, as well as other cases they have been involved in and received comparable rates in, to justify the rate they are seeking. No such information is supplied for Mr. Greerty.

37.  In summary, there is a lack of evidence supplied regarding Mr. Greerty's skill, expertise or reputation, or indicating that he has any particular expertise in the subject matter of the litigation, to justify the rate sought. Since he has also not provided any information regarding rates of any type which he has charged, been paid, or been granted by any Court, I have been asked to apply the 2008 Ninth Circuit rate for lawyers seeking fees under the Equal Access to Justice Act of $172.85 per hour (which appears to be the latest rate published by the Ninth Circuit) to his time.

Analysis of time worked by Mr. Greerty

Excessive time–Overbilling

38.  Another problem with Mr. Greerty's time is that, based on my review of various materials in the file, his time appears substantially overbilled. As indicated above, among the analyses I undertake in my reviews is to attempt to determine if the time billed for particular work appears accurate and reasonable as an indication of whether the time billed on the case overall is accurate and reasonable. I accordingly review the file in the case and compare the time billed for certain types of activities where, based on my experience as a litigator and in doing large numbers of fee reviews, I can confidently determine whether the time billed is reasonable and appears accurate-- typically correspondence, emails and certain types of pleadings and other work product. As noted earlier, I am not looking for isolated instances of apparent overbilling, but rather whether there appears to be a pattern and practice of overbilling.

Decl. Gary Greenfield–Opp. Mot. Fees          16

39. In this case, I compared virtually every non-block billed entry for correspondence, emails and other work product to the corresponding work product which I was able to locate in the file. During the course of that review, I found a consistent pattern of billing excessive time for reviewing and preparing correspondence and other materials. While in isolation some of the amounts identified appear relatively small, the consistency of the recording of excessive time for these activities reflects an attitude toward billing that likely permeates all the time billed by Mr. Greerty.

40. Attached hereto as part of Exhibit 3 is a collective exhibit containing the materials I reviewed in the file which, in my opinion, reflect billing of excessive time by Mr. Greerty. In each case, I have written on the document the date of the time entry, the time billed by Mr. Greerty and the unique identification number of the time entry in our database (which I have circled). Attached as Exhibit 4 is a database report containing all the entries discussed below (along with the other entries billed on those dates for context, again with the identification numbers of "overbilled" time entries circled.) I have set out in the following discussion the time billed, a description of the work, and the date of Mr. Greerty's time entry.

41. For example, on 9-16-08, Mr Greerty billed 1.3 hours to review a simple draft Joint Administrative Motion and Stipulation to Modify Pretrial Preparation Order and related Order regarding scheduling which had been prepared by defendant's counsel. See Exhibit 3-1. Then on 9-23-08, Mr. Greerty billed an additional 1.1 hours for "receipt and review" of essentially the identical Stipulation and Order when it was being sent to the Court. See Exhibit 3-2. (He billed separately to discuss the proposed Stipulation with Mr. Scott. 9-16-08 Greerty entry.) It is simply not believable that it took Mr. Greerty 1.3 hours and then an additional 1.1 hours (or anywhere close to those amounts) to review this document. At most, it would take a few minutes to review this Stipulation and

Decl. Gary Greenfield–Opp. Mot. Fees          17

determine that the dates reflected the agreed-upon dates. Notably, Mr. Scott did not bill any time at all for reviewing this Stipulation on either occasion.

42. As another example, on 4-20-09, Mr. Greerty billed 2.7 hours to review two proposed special instructions and 1.5 hours to review two model instructions sent by his co-counsel Mr. Scott to defendant's counsel in a letter dated 4-20-09 (Exhibit 3-3). Again, it is simply not believable that Mr. Greerty spent 4.2 hours (or any amount of time close to that) reviewing these four jury instructions prepared by his co-counsel Mr. Scott.

43. There are numerous other examples of work, typically "reviewing" various materials, where the time in my opinion is substantially overbilled (and in many cases should not have been billed at all):

    a.    .7 hours to review the two paragraph Notice of Removal of Action filed by defendant (10-26-07 Greerty entry) (Exhibit 3-4);

    b.    .6 hours to draft a one-sentence confirming letter to counsel for defendant (12-4-08 Greerty entry) (Exhibit 3-5);

    c.    .7 hours to review a four sentence letter from co-counsel (11-21-08 Greerty entry) (Exhibit 3-6);

    d.    .9 hours for reviewing an enclosure letter (and a telephone call with co-counsel Scott that Scott did not even bill for) (2-22-08 Greerty entry) (Exhibit 3-7);

    e.    .5 hours to "review deposition notices" which was actually one simple Notice of Depositions from co-counsel Scott for the depositions of six Highway Patrol officers (the scheduling of which had been discussed with Mr. Scott for which Mr.

Decl. Gary Greenfield–Opp. Mot. Fees        18

Greerty separately billed .8 hours) (Exhibit 3-8) and .7 hours more to review the letter confirming the same depositions (with one addition) (Exhibit 3-9) (10-21-08 Greerty entries);

f.    .2 hours for reviewing the Declination to Utilize Magistrate Judge (12-11-07 Greerty entry) (Exhibit 3-10);

g.    .4 hours for reviewing co-counsel Scott's letter to counsel for defendant confirming various items regarding the Early Neutral Evaluation, which Mr. Greerty had discussed with Mr. Scott for which the time was separately billed (5-6-08 Greerty entries) (Exhibit 3-11);

h.    .3 hours billed for reviewing a two sentence enclosure letter, the time for reviewing the enclosures being billed separately (1-2-09 Greerty Entry) (Exhibit 3-12);

i.    .3 hours billed for reviewing a simple enclosure letter (1-22-09 Greerty Entry) (Exhibit 3-13);

j.    .3 hours for reviewing a two sentence letter from co-counsel Scott regarding defendant's withdrawal of a subpoena (12-08-08 Greerty entry) (Exhibit 3-14);

k.    .4 hours for three sentence letter objecting to subpoena as beyond discovery cut-off and indicating intention to file motion to quash (12-5-08 Greerty entry) (Exhibit 3-15);

l.    1.4 hours to review the 5-page draft of the simple First Amended Complaint, prepared by his co-counsel Mr. Scott and which they spent 2.5 hours on 2-20-08

Decl. Gary Greenfield–Opp. Mot. Fees        19

discussing (2-27-08 Greerty entry) (Exhibit 3-16);

44. With respect to almost every piece of correspondence or simple pleading I reviewed in the file where the time was not block-billed (so I could determine the amount of time that was recorded for the activity), Mr. Greerty's time appeared substantially overbilled. As stated above, while the time billed on a number of these items was relatively small, in many cases, such as with confirming letters and the Declination to Proceed to Utilize Magistrate, no time should been billed at all as a matter of billing judgment even if a minute or two was spent in reviewing the document. In short, there was a pattern and practice of overbilling of Mr. Greerty's time. Since there is no reason to believe that Mr. Greerty did not bill his other work in the same manner, a substantial adjustment should be made to Mr. Greerty's hours to take into account the overbilling. The adjustment I have made is set out in the Summary of Analysis section below.

Inappropriate time billed–Mr. Greerty

45. There were also a few entries I identified reflecting work which was inappropriate to bill altogether. Mr. Greerty's first application for appointment as Guardian Ad Litem was apparently rejected by the Court and he had to redo it. App. B., T. Greerty 6-29-07, 7-31-07 entries. He is not entitled to compensation for time spent redoing work to correct it. [12]

---

[12] It is possible that the 7-31-07 entry was not for re-drafting the Application, but rather for actually delivering it to the Court in San Francisco, since he had already billed to prepare the papers for refiling on 6-29-07, but time for an attorney delivering papers to Court for filing would not be appropriately billable either, absent some evidence that his going to Court was necessary.

Decl. Gary Greenfield–Opp. Mot. Fees          20

Mr. Scott Rate and Time Billed

46.    Next, I will address the market rate sought for Mr. Scott and the time he billed.

Market rate for Mr. Scott

47.    In the Motion, a rate of $600 per hour is sought for Mr. Scott's time. [13]

48.    Unlike with respect to Mr. Greerty, information in addition to Mr. Scott's years in practice and general areas of work are provided to support the rate sought. It appears that he has substantial experience in cases of this type and in litigating civil rights cases in general. He provides examples in his Declaration.

49.    Documents were produced in discovery which bear directly on the appropriate rate to be applied to Mr. Scott's time. Among the materials produced was a fee agreement entered into between Mr. Scott and Ms. Casey, for his representation of her as Guardian Ad Litem for J.E., a copy of which is attached hereto as Exhibit 5 (the "Fee Agreement"). In the Fee Agreement (which appears to be his firm's standard agreement), Mr. Scott indicates that his firm's "usual hourly fee for cases with similar issues to [plaintiff's] is the sum of $500-$550 per hour for partners and $300-$350 per hour for associates." Fee Agreement, §4. This type of evidence is the best evidence, in my opinion, of the appropriate rates to

---

[13] In his Declaration, Mr. Scott states he is seeking $625 per hour. However, in the Motion, the rate sought for his time is $600 per hour, which is also the rate sought for Mr. Scott's time in plaintiffs' settlement letter. We have accordingly used $600 per hour as the "sought" rate. Since, in my opinion, $600 per hour is itself an inappropriately high rate for Mr. Scott's time in this case, the same analysis applies if $625 is considered the "sought" rate.

Decl. Gary Greenfield–Opp. Mot. Fees          21

be applied to the work of billers in the firm since it reflects what Mr. Scott's firm is charging in the market for their time for comparable work.

50.    In addition, in 2007, Mr. Scott was awarded $500 per hour for work in a civil rights case venued in the Central District of California, Franklin v. State of California Youth Authority ("Franklin"), a copy of which is attached hereto as Exhibit 6.

51.    In my opinion, based on the foregoing and the information provided in Mr. Scott's Declaration filed in support of the Motion, which indicates that he has substantially more experience and expertise in the area of this litigation than Mr. Greerty, the appropriate rate to apply to Mr. Scott's senior level work in this case is $500 per hour.  It would be inappropriate to apply a rate of $600 per hour to Mr. Scott's senior level time because that is significantly more than his own Fee Agreement in this case indicates his firm normally charges for work in this type of case, there is no evidence that he has been awarded $600 per hour in any other case, and it is consistent with the Court's decision in Franklin. [14] Accordingly, in my opinion, $500 is the appropriate rate for Mr. Scott for this type of case in the San Francisco Bay Area.

52.    Determining the market rate for Mr. Scott's senior lawyer work does not end the inquiry

[14] While the Court in Franklin awarded $500 per hour to Mr. Scott in 2007, and rates have gone up since then, rates are also somewhat higher generally in the Central District of California, and, as indicated earlier, have not increased significantly in 2009 as they did in past years.  Thus, while Mr. Scott might receive in 2009 somewhat more in a comparable case in the Central District of California than he received in 2007, he would also receive a somewhat lower rate in the Northern District of California because the rates in this market are somewhat lower. Thus, $500 is the appropriate rate in this market at the current time.

Decl. Gary Greenfield–Opp. Mot. Fees          22

as to the rate to be applied to his hours overall. Mr. Scott undertook certain work which could have been as efficiently performed by a more junior lawyer billing at a lower rate. A fee-paying client would expect a law firm to either assign a more junior lawyer with a lower billing rate to work which a junior lawyer could perform or the firm would reduce the fees billed in the exercise of billing judgment so that the fees were equivalent to what would have been billed by the more junior lawyer. A party seeking fees from an opponent in a fee-shifting case must make the same adjustment. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). These activities included certain research, preparation of the initial drafts of oppositions to defendant's motions and a motion by plaintiff to exclude defendant's expert, preparation of jury instructions, and motions in limine. [15] The time entries reflecting this work, which in my opinion should not be billed at Mr. Scott's senior lawyer rate, are contained on Exhibit 7 hereto. [16] As noted above, the Fee

---

[15] I am not suggesting that Mr. Scott should not be undertaking this work if he has no one at a lower billing rate to do it, but rather that it is inappropriate to bill it at a senior lawyer rate. Most, if not all, of the firms discussed in the Mayer and Pearl Declarations and in the Bankruptcy Court applications have a range of billers in terms of experience levels and billing rates, so that the senior people, billing at rates such as $600 and above, are not doing work that personnel at lower billing rates at their firms can undertake (or at least they should not be billing such work at their senior rates.) I am familiar with many of the firms that are listed in those Declarations and generally familiar with how law firms operate and, in firms with varying levels of personnel, work is delegated to personnel consistent with their experience and billing rates and more junior work is assigned to people with lower rates.

[16] I did not consider all the hours worked by Mr. Scott on the various motions and other projects referenced in Exhibit 7 as inappropriate to bill and subject to adjustment because a

Decl. Gary Greenfield–Opp. Mot. Fees          23

Agreement provides that the Scott firm charges $300 to $350 for time worked by associates on these types of cases. On the Motion, plaintiff is seeking recovery of $300 per hour for the time of Elizabeth de Vries for work (research and preparation of the Opposition to defendant's Renewed Motion for Judgment as a Matter of Law, App. B, de Vries 6-4-09 entry) which is similar to the level of work by Mr. Scott as indicated on Exhibit 7. Thus, $300 per hour is in my opinion the correct rate to apply to the work undertaken by Mr. Scott which was appropriate for more junior lawyers.

Summary of analysis

53.    Based on the foregoing analysis, I am making the following adjustments to the lodestar being sought:

    a.    Mr. Greerty's total hours of 425.40 are being reduced by 244.2 hours, the hours he billed during the period until April 2, 2009, during which he acted both as Guardian Ad Litem for A.D. and counsel to himself as Guardian Ad Litem, which leaves 181.2 hours;

    b.    Mr. Greerty's remaining hours are being reduced by 50% because of evidence that he overbilled his time, which leaves 90.60 hours;

    c.    The appropriate rate to be applied to Mr. Greerty's remaining hours is $172.85 per

_____

senior lawyer will appropriately spend some time reviewing and revising work product of junior lawyers and appropriately bill that time at his or her normal rate. The time entries on Exhibit 7 consist of only a portion of the hours he billed on the various motions and other projects referred to therein.

Decl. Gary Greenfield–Opp. Mot. Fees          24

hour;

    d.     98.7 hours billed by Mr. Scott should be adjusted to a rate of $300 per hour; and

    e.     The appropriate rate to be applied to Mr. Scott's remaining hours for his senior level work is $500 per hour.

54.    I would not adjust the hours or rates of the other billers' for whom time is sought on the Motion.

55.    The resulting lodestar is $213,925.21.

56.    The foregoing calculations are set forth on Exhibit 1.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Dated:  October 16, 2009

_____
Gary Greenfield

Decl. Gary Greenfield–Opp. Mot. Fees       25