IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.D., a minor, *et al.*, | No. C 07-5483 SI |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| STATE OF CALIFORNIA HIGHWAY PATROL, *et al.*, | |
| Defendants. | |

Plaintiffs' motion for attorneys' fees and expenses is scheduled for a hearing on November 13, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS plaintiffs' motion. However, while recognizing the complexities and challenges posed by this case, the Court declines to award a multiplier.

**DISCUSSION**

A jury trial was held from April 27 - May 7, 2009. The jury found in favor of plaintiffs A.D. and J.E. on their claim that defendant Markgraf violated their Fourteenth Amendment rights by unlawfully depriving them of their liberty interest in their family relationship with their mother, Karen Eklund. In a bifurcated damages phase, the jury awarded $30,000 to each plaintiff. The Court entered final judgment on May 8, 2009, and by order filed June 23, 2009, denied defendant's renewed motion for judgment as a matter of law and motion for a new trial. On July 9, 2009, defendant filed a notice of appeal. Now before the Court is plaintiffs' motion for attorneys' fees and expenses pursuant to 42

U.S.C. § 1988(b).

Plaintiffs seek a total of $806,676.95 in attorneys' fees and expenses, broken down as follows: (1) a lodestar of $489,631.00 on merits work, with a 1.5 multiplier for the undesirability of this case, for a total of $734,446.50 of merits fees; (2) $6,402.59 in merits expenses; (3) $65,490.00 in attorneys' fees for work on the instant fee petition through November 13, 2009; and (4) $337.86 in expenses for the fee petition.[1] In support of the fee petition, plaintiffs have submitted declarations from trial counsel, John Scott and Thomas Greerty, attesting to their professional experience as well as describing their work on this case. Both Mr. Scott and Mr. Greerty have submitted summaries of the time they and their associates spent on this case, as well as a listing of expenses incurred. *See* Scott Decl. ¶¶ 31, 33, Ex. B-D; Greerty Decl. ¶¶ 31, 33, 35, Ex. D, F, G. In support of the hourly rates sought, plaintiffs have submitted the declarations of Steven Mayer, a director of the firm of Howard, Rice, Nemerovski, Canady, Falk & Rabin, and Richard Pearl, an attorney who specializes in issues involving court-awarded attorney's fees. Plaintiffs also seek judicial notice of orders granting fee applications in *In re Heller Ehrman LLP*, Case No. 08-32514 (Bankr. N.D. Cal.). Plaintiffs have also submitted the declaration of John Burris, an attorney who specializes in police misconduct cases, discussing the risks involved in litigating such cases generally, as well as his opinion of the particular risks posed by this case. Finally, plaintiffs have submitted the declarations of Sue Casey, the Court Appointed Special Advocate for plaintiff A.D. at the time of Ms. Eklund's death, and Jon Christopher Weir, an attorney who represented Ms. Eklund in the Contra Costa County Superior Court dependency proceedings involving her children, A.D. and J.E.

Under 42 U.S.C. § 1988(b), the Court has discretion to award plaintiffs their reasonable attorneys' fees and expenses. Reasonable attorneys' fees are determined by the "lodestar method," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In determining the appropriate number of hours to be included in a lodestar calculation, the Court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Id*. at 434. "The party seeking the award should provide

---

[1] These amount reflect certain deductions made by plaintiffs in response to defendant's opposition. Those deductions are discussed *infra*.

2

documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

## I. Level of success

Defendant opposes plaintiffs' motion for attorneys' fees and expenses on several grounds. Defendant contends that plaintiffs' fee award should be greatly reduced to reflect plaintiffs' "limited success" at trial. In a Section 1983 case, "[t]he reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff." *Id.* at 1101-02 (citing *Hensley*, 461 U.S. at 436). "Under *Hensley*, the reasonableness of a fee award is determined by answering two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Id.* at 1103.

With regard to the first question, defendant asserts that plaintiffs' lodestar should be reduced to reflect the fact that they prevailed on only one of the four claims alleged in the complaint; the operative complaint alleged Section 1983 claims for excessive force, deliberate indifference to obtain medical assistance, and deprivation of familial relationship, as well as a state law claim for wrongful death. Plaintiffs abandoned the excessive force, deliberate indifference, and state law wrongful death claims before trial, and went to trial only on the Fourteenth Amendment deprivation of familial relationship claim.

"[I]n a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *Id.* (holding district court properly treated claims as related for purpose of determining attorneys' fees where "[e]ach of McCown's claims, though brought on the basis of different legal theories against different defendants, arose from a common core of facts, namely, his arrest on June 2, 2004."). Here, all four claims were factually related and arose out of the same incident: the March 23, 2006 shooting of Karen Eklund. Defendant speculates that "many" of the lodestar hours for which counsel seek payment were spent on the claims that plaintiffs abandoned before trial. However, defendant has not identified any work that is segregable. Moreover, given the

3

factual and legal relatedness of the claims it would be inappropriate to reduce the fee award simply because plaintiffs prevailed on only one of four claims alleged in the operative complaint.

With regard to the second *Hensley* question about level of success, defendant argues that plaintiffs achieved "limited success" because the jury awarded less in damages than plaintiffs could have obtained through settlement. Defendant has submitted the declaration of defense counsel describing offers made during pretrial settlement negotiations, as well as a pretrial settlement demand from plaintiffs' counsel. Plaintiffs object to defendant's reliance on confidential settlement communications on the ground that settlement communications are generally confidential under Federal Rule of Evidence 408 and the Local Rules of the Northern District, and they also dispute defendant's characterization of the parties' settlement discussions. The Court agrees that it is improper for defendant to rely on confidential settlement negotiations to oppose plaintiffs' fee motion. *Cf. McCown*, 565 F.3d at 1104 n.4 (considering settlement negotiations to assess reasonableness of fee award, but stating "Although we generally refrain from referencing proposed settlement agreements in light of Federal Rule of Evidence 408, in this case both parties sought to introduce evidence of settlement discussions and negotiations, and the district court considered that evidence when making its ruling on attorney's fees. The $251,000 figure was brought to the district court by [the plaintiff]."). The Court also notes that if defendant wished to limit plaintiffs' recovery, defendant could have, but did not, make a Rule 68 offer of judgment.

Defendant also argues that plaintiffs were "minimally successful" because the jury only awarded $30,000 in damages to each plaintiff, far less than plaintiffs' Rule 26 statement of damages asserting damages of $1,500,000 per plaintiff. Although plaintiffs did not obtain substantial monetary damages, they received much more than the nominal damages urged by defendant. Moreover, "[s]uccess is measured not only by the amount of the recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales v. City of San Rafael*, 96 F.3d 357, 365 (9th Cir. 1996). Plaintiffs fully prevailed on their claims at trial, and in so

4

doing vindicated their constitutional rights.[2] Wrongful death cases such as the instant one present questions of vital importance to the public. In addition to obtaining relatively modest damages, plaintiffs achieved "significant nonmonetary results" in that the jury's verdict will likely deter defendant Markgraf from engaging in future unconstitutional conduct. *See id.* at 365. Because of the significance of the legal issues and the deterrent effect of this case, the Court rejects defendant's contention that the lodestar should be reduced due to the discrepancy between the damages claimed in the litigation and the damages awarded.

Defendant also asserts that "the low verdict amount is not explained by the difficulty or complexity of the case," and that the lodestar should be reduced because this was "a straightforward police shooting case." Defendant's current position that this case was simple is belied by the vigorous defense of this case; defendants moved to dismiss, moved for summary judgment, contested liability at trial, and filed post-trial motions seeking judgment as a matter of law and a new trial. Contrary to defendant's assertions, this case was factually and legally complicated, and posed numerous challenges for plaintiffs. Plaintiffs had to overcome defendants' assertion of qualified immunity, and had to establish that defendant Markgraf acted with a purpose to harm unrelated to a legitimate law enforcement objective, a very high standard. The only witnesses to the incident were law enforcement officers, and there were factual disputes about whether Eklund was attempting to run over officers when she was shot. The complexity of the case is illustrated by the fact that defendants retained several experts and prepared sophisticated and complicated video and computerized reconstructions of the car chase and events leading up to the shooting.

## II. Specific challenges to lodestar

As a general matter, defendant contends that plaintiffs have not met their burden of documenting appropriate hours and rates because many time entries are "vague and summary in nature," and include "block billing." The Court has reviewed the billing summaries and finds that they sufficiently describe

---

[2] Again, although defendant emphasizes that plaintiffs prevailed on one of the four claims alleged in the complaint, the Court finds it significant that plaintiffs did not lose any claims based on adverse rulings of the court or adverse findings by the trier of fact.

the tasks performed to enable the Court's review of the fee petition. *See Hensley*, 461 U.S. at 437 n.12 (A plaintiff is "not required to record in great detail how each minute of his time was expended," but only "identify the general subject matter of his time expenditure.").

### A. Mr. Greerty's role as Guardian ad Litem for A.D.

Defendant contends that Mr. Greerty should not recover for any time when he was acting in the dual roles as guardian ad litem and attorney for A.D. The circumstances surrounding Mr. Greerty's appointment as guardian ad litem are as follows: The declaration of Sue Casey, a licensed attorney, states,

> I have served as a Court Appointed Special Advocate ("CASA") for minors in Contra Costa County for four years. At the time of the police shooting in this case I was the CASA for the minor A.D. Based on news reports and media speculation as to what happened to Karen Eklund on the night of her death, I asked minor's counsel to urge the court to appoint a lawyer to represent A.D. and find out what really happened on the night of her mother's death. A.D. had been very agitated about the circumstances surrounding her mother's death. After I told her, she looked up the newspaper articles that had been written about it, and was very concerned. Present in court when I asked the judge to appoint an attorney to represent A.D. was Chris Weir, attorney for Karen Eklund. He recommended to the court the appointment of Tom Greerty. The court subsequently contacted Mr. Greerty, and he agreed to take the case as attorney for the minor and guardian ad litem.

Casey Decl. ¶ 2; *see also* Greerty Decl. ¶ 4, Ex. B (Order Appointing Counsel, appointing Mr. Greerty "as guardian ad litem in the juvenile matter to investigate allegations of wrongful death of the minor's mother."). Based upon his investigation of the facts surrounding Ms. Eklund's death,[3] Mr. Greerty decided to file a tort claim on A.D.'s behalf, and after the claim was rejected, filed this lawsuit on May 18, 2007 in state court. *Id*. ¶¶ 7, 15. In order to proceed with the state lawsuit, Mr. Greerty took steps to be appointed as guardian ad litem for A.D. by the San Francisco Superior Court. *Id*. ¶ 16, Ex. C. Defendants removed the case to this Court, and in January 2008, Mr. Scott joined this case as counsel for J.E., A.D.'s brother. Ms. Casey was appointed as guardian ad litem for J.E.

Mr. Greerty was A.D.'s guardian ad litem until Ms. Casey replaced him as guardian ad litem on

---

[3] Mr. Greerty states that as part of his investigation, he contacted journalists who had covered the story of Ms. Eklund's death, sought records from the San Francisco medical examiner's office, the California Highway Patrol, and the San Francisco Police Department. Mr. Greerty also sought to find eyewitnesses by visiting the scene of the shooting and talking to people in the neighborhood where the death occurred. *Id*. ¶ 8.

April 2, 2009, shortly before trial. Mr. Greerty states in his declaration that he "spent a significant amount of time communicating with Sue Casey, social workers, and attorneys involved in managing the foster care of our clients." Greerty Decl. ¶ 21. Mr. Greerty also states,

> When I took this case, I knew it would be hard, but I always thought it would settle. This was a concern of mine when I asked the court to appoint Sue Casey as Guardian ad Litem for A.D. I felt as we got closer to trial that we would ultimately settle the case, and need a minor's compromise. Her official opinion, along with mine, would be very helpful in convincing the court that it was in the minor's best interest to compromise the case. The judge appointed Ms. Casey upon my recommendation. Her appointment did not change our relationship. Everything remained the same because from the very beginning of the case I did everything involving the kids through her. She also attended and participated in the ENE session and the court-ordered settlement conference.

Supp. Greerty Decl. ¶ 10; *see also* Casey Decl. ¶¶ 3-5 (describing her work with Mr. Greerty and participation in case).

Defendant asserts that Mr. Greerty had a conflict of interest during the time he was acting as guardian ad litem for A.D. and as A.D.'s attorney, and that he "was essentially his own client." Defendant argues that A.D. was denied the benefit of an objective decision regarding settlement because Mr. Greerty was both A.D.'s guardian ad litem and attorney during pretrial settlement negotiations, including a March 20, 2009 settlement conference. Defendant relies on *Kay v. Ehrler*, 499 U.S. 432 (1991), in which the Supreme Court held that a *pro se* attorney is not entitled to fees under 42 U.S.C. § 1988. The *Kay* Court framed the question as " whether a lawyer who represents himself should be treated like other pro se litigants or like a client who has had the benefit of the advice and advocacy of an independent attorney." *Id.* at 435. The Court held that while the language of Section 1988 did not answer the question, the "statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 438. This is so because a lawyer who represents himself "is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id.* at 437; *see also Ford v. Long Beach Unified Sch. Dist.*, 461 F.3d 1087, 1091 (9th Cir. 2006) (interpreting IDEA consistently with § 1988 and denying a mother-attorney fees because "[l]ike an attorney appearing pro se, a disabled child represented by his or her parent does not benefit from the

7

judgment of an independent third party. Indeed, the danger of inadequate representation is as great when an emotionally charged parent represents his minor child as when the parent represents himself.") (internal quotations omitted).

Plaintiffs argue that these cases are distinguishable because Mr. Greerty never represented himself , and his status as guardian ad litem did not alter his fiduciary and ethical duties to A.D. Plaintiffs argue that A.D. has always been and remains the real party in interest (along with her brother, J.E.). Plaintiffs cite cases in which courts have awarded fees to attorneys who were both the guardian ad litem and the lawyer. *See E.E.O.C. v. CEC Entertainment, Inc.*, No. 98-C-698-X, 2000 WL 1339288, *29-30 (W.D. Wis. Mar. 14, 2000) (ADA case; "Murphy was appointed to represent Perkl's best interests, not her own. . . . Moreover, it is not inappropriate for an individual to serve the dual roles of attorney and guardian ad litem for an incompetent client."); *see also Lebron v. United States*, 279 F.3d 321, 332 (5th Cir. 2002) (Federal Tort Claims Act case; holding that when same person acts as guardian ad litem and as attorney, guardian ad litem expenses are recoverable under Rule 54(d) while fees and expenses incurred in role as attorney "would be treated as any other attorneys' fees.").

The Court finds there is no inherent structural conflict between Mr. Greerty's roles as guardian ad litem and attorney for A.D., and that in both capacities Mr. Greerty was acting on behalf of, and in the best interest of, A.D. Unlike *Kay* where the attorney was representing himself, or *Ford* where the attorney was representing her child, here there is no familial relationship between Mr. Greerty and A.D. Mr. Greerty was appointed as guardian ad litem in order to represent the best interests of A.D., and defendant has made no showing that Mr. Greerty's representation of A.D. was compromised. To the contrary, the declarations submitted by plaintiffs show that Mr. Greerty effectively and ably represented A.D., and that both plaintiffs had the benefit of the judgment not only of Mr. Greerty, but also Sue Casey and Mr. Scott. *See* Casey Decl. ¶¶ 3-6 (describing in detail Mr. Greerty's work with the plaintiffs). The Court finds that Mr. Greerty may recover attorneys' fees for the time that he also acted as A.D.'s guardian ad litem.

### B. "Duplicative" time and staffing decisions

Next, defendant challenges as duplicative and unnecessary time spent by both Mr. Scott and Mr.

Greerty on the same task, such as time Mr. Greerty spent "reviewing" a document prepared by Mr. Scott, time both counsel spent on telephone calls with each other to discuss the case, or time spent by both counsel to prepare for the same deposition that both counsel attended. However, "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). Defendant has not shown that any of the work performed was unnecessary, and considering the complexity of this case it seems reasonable that plaintiffs' counsel would need to confer with each other, review pleadings prepared by the other, and both prepare for important depositions. Moreover, as plaintiffs note, defendants were represented at various hearings and at trial by two lawyers. In any event, in response to defendant's opposition plaintiffs have reduced the total hours sought for Mr. Greerty by 10% from 425.4 to 382.86. The Court is satisfied that this reduction has eliminated any unnecessarily duplicative time.

Defendant also argues that Mr. Scott should have delegated more work to a junior attorney with a lower billing rate. However, as the Ninth Circuit has instructed,

> The district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case. The court may permissibly look to the hourly rates charged by comparable attorneys for similar work, but may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests. The difficulty and skill level of the work performed, and the result achieved – not whether it would have been cheaper to delegate the work to other attorneys – must drive the district court's decision.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). There are numerous effective staffing models, and while it is true that a junior attorney might be able to complete the same task as efficiently as a more senior attorney, in other instances "lead counsel can doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely." *Id*. The Court is satisfied that the fees requested are reasonable and justified by the results obtained, and finds it inappropriate and unnecessary to speculate about whether different staffing decisions would have led to the same results at a lower cost.

### C. Rates

Defendant also challenges the $600 hourly rate sought for Mr. Scott and Mr. Greerty. Defendant does not challenge the hourly rates sought for attorneys Lizabeth de Vries ($300), John P. Greerty ($175), Amitai Schwartz ($600), or Moira Duvernay ($300). Mr. Schwartz and Ms. Duvernay worked on the fee petition, while all other attorneys worked on the merits of the litigation. Defendant argues that Mr. Greerty has not provided evidence that he customarily charges clients $600 per hour or that he has been awarded a $600 per hour rate by a court, and that in the absence of any such evidence, he should be compensated at the 2008 rate established by the Ninth Circuit for lawyers appointed under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A), or $172.85 per hour. Defendant argues that Mr. Scott should be compensated at $500 per hour based upon a fee agreement Mr. Scott entered into in 2007 with Sue Casey, for his representation of her as Guardian Ad Litem for plaintiff J.E., as well as a 2007 fee award approving a $500 per hour rate for Mr. Scott.

A court awarding attorney fees must look to the prevailing market rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Bell v. Clackamas County*, 341 F.3d 858, 860 (9th Cir. 2003). "[I]t is perfectly appropriate for a district court to award an hourly rate higher than is customarily charged by the plaintiff's attorney or than is set forth in the retainer fee agreement." *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996). Plaintiffs have submitted ample evidence in support of the claimed $600 rate for both Mr. Greerty and Mr. Scott. Mr. Greerty has 30 years of experience, is a former deputy district attorney, and has devoted a sizable portion of his career to representing the interests of minors. *See also* Weir Decl. ¶ 3; Supp. Scott Decl. ¶¶ 6-8; Casey Decl. ¶ 5 (describing Mr. Greerty's experience). Mr. Scott has 33 years of experience, and has extensive experience litigating against public entities, and litigating cases alleging police wrongdoing and violations of constitutional rights. Plaintiffs have submitted evidence that the prevailing market rate for attorneys of Mr. Greerty and Mr. Scott's experience is at or above $600 per hour. *See* Pearl Decl. ¶¶ 7-9; Mayer Decl. ¶ 2.

### D. Travel time

Defendant contends that Mr. Greerty's travel time should not be compensated at a full rate.

10

While defendant is correct that the Court may in its discretion reduce an hourly rate for travel time, the Court may also award travel time at a full rate. *See McDonald v. Armontrout*, 860 F.2d 1456, 1463 (8th Cir. 1988). The central inquiry is whether the time sought is reasonable. Here, Mr. Greerty seeks to recover for travel time to court, for depositions, and traveling to Merced, Modesto and other locations to interview J.E. and A.D and prepare them for depositions and trial. This time is reasonable, and the Court finds no reason to reduce the rate for travel time.

### E. Fees for fee petition

Plaintiffs seek their fees and expenses incurred in litigating the fee petition. Defendant does not raise any specific objection to this request, and the Court finds that the time spent on the fee motion is reasonable and compensable. *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008). Because the Court vacated the hearing on the fee motion, the Court deducts the 4 hours of Mr. Schwartz's time that he had allocated to the hearing on this matter ($2,400).

## III. Costs

As a general matter, defendant argues that because plaintiffs did not file a timely bill of costs pursuant to 28 U.S.C. § 1920, plaintiffs are precluded from recovering costs under 42 U.S.C. § 1988. However, defendant does not cite any authority for this proposition, and nothing in the text of Section 1988 requires that a plaintiff first file a § 1920 bill of costs. Provided that the costs are recoverable under 42 U.S.C. § 1988, plaintiffs may seek them in the instant fee petition.

Defendant also argues that particular costs are not recoverable. Defendant challenges a $122.27 hotel charge for A.D. and J.E. the night before plaintiffs testified at trial. This charge is recoverable. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (postage, investigator, copying, hotel bills, messenger service, and reproduction costs were reasonable and recoverable under § 1988). In response to defendant's opposition, plaintiffs have deducted an unrelated $40 court filing fee.

## IV. Multiplier

Plaintiffs seek a multiplier of 1.5 on the lodestar. Plaintiffs contend that a multiplier is necessary

11

to a determination of a reasonable fee because of the extreme undesirability of this case. The Court may enhance the lodestar figure " where the applicant has met the burden of showing that 'such an adjustment is necessary to the determination of a reasonable fee.'" *Guam Soc'y*, 100 F.3d at 697 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Although the Court recognizes the risks posed by this case, including the fact that the decedent was unsympathetic, the Court declines to award a multiplier.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiffs' motion for attorneys' fees and expenses as follows: $489,631 in fees for merits work; $6,402.59 for merits expenses; $63,490 in fees for the fee petition; and $337.86 in expenses for the fee petition. In addition, plaintiffs' counsel are entitled to post-judgment interest on the merits fees and expenses accruing from May 8, 2009. (Docket No. 121).

**IT IS SO ORDERED.**

Dated: November 10, 2009

SUSAN ILLSTON
United States District Judge