IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.D., a minor, *et al.*,<br><br>      Plaintiffs,<br><br>   v.<br><br>STATE OF CALIFORNIA HIGHWAY PATROL, *et al.*,<br><br>      Defendants.<br>_____ / | No. C 07-5483 SI<br><br>**ORDER GRANTING PLAINTIFFS' SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND COSTS** |

Now before the Court is plaintiffs' supplemental motion for attorneys' fees and expenses. For the reasons set forth below, the Court GRANTS plaintiffs' motion. Docket No. 173.

**BACKGROUND**

A jury trial was held in this wrongful death case from April 27 - May 7, 2009. The jury found in favor of plaintiffs A.D. and J.E. on their claim that defendant Markgraf violated their Fourteenth Amendment rights by unlawfully depriving them of their liberty interest in their family relationship with their mother, Karen Eklund. In a bifurcated damages phase, the jury awarded $30,000 to each plaintiff. The Court entered final judgment on May 8, 2009, and by order filed June 23, 2009, denied defendant's renewed motion for judgment as a matter of law and motion for a new trial. On July 9, 2009, defendant filed a notice of appeal.

In an order filed November 10, 2009, the Court granted plaintiffs' motion for attorneys' fees and costs. The Court rejected defendant's argument that the fee award should be reduced because plaintiffs had achieved "limited success" at trial:

> Although plaintiffs did not obtain substantial monetary damages, they received much more than the nominal damages urged by defendant. Moreover, "[s]uccess is measured not only by the amount of the recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales v. City of San Rafael*, 96 F.3d 357, 365 (9th Cir. 1996). Plaintiffs fully prevailed on their claims at trial, and in so doing vindicated their constitutional rights. Wrongful death cases such as the instant one present questions of vital importance to the public. In addition to obtaining relatively modest damages, plaintiffs achieved "significant nonmonetary results" in that the jury's verdict will likely deter defendant Markgraf from engaging in future unconstitutional conduct. *See id*. at 365. Because of the significance of the legal issues and the deterrent effect of this case, the Court rejects defendant's contention that the lodestar should be reduced due to the discrepancy between the damages claimed in the litigation and the damages awarded.
>
> Defendant also asserts that "the low verdict amount is not explained by the difficulty or complexity of the case," and that the lodestar should be reduced because this was "a straightforward police shooting case." Defendant's current position that this case was simple is belied by the vigorous defense of this case; defendants moved to dismiss, moved for summary judgment, contested liability at trial, and filed post-trial motions seeking judgment as a matter of law and a new trial. Contrary to defendant's assertions, this case was factually and legally complicated, and posed numerous challenges for plaintiffs. Plaintiffs had to overcome defendants' assertion of qualified immunity, and had to establish that defendant Markgraf acted with a purpose to harm unrelated to a legitimate law enforcement objective, a very high standard. The only witnesses to the incident were law enforcement officers, and there were factual disputes about whether Eklund was attempting to run over officers when she was shot. The complexity of the case is illustrated by the fact that defendants retained several experts and prepared sophisticated and complicated video and computerized reconstructions of the car chase and events leading up to the shooting.

Docket No. 144 at 3-4 (footnote omitted). Citing *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009), the Court also held that it could not consider the parties' settlement negotiations in determining a reasonable fee. *See id*. at 4. The Court awarded plaintiffs their lodestar and denied plaintiffs' request for a multiplier. Defendant appealed the fee order.

The merits and fees appeals were briefed, and on November 30, 2010, the Ninth Circuit held oral argument. On April 6, 2011, the Ninth Circuit issued its first opinion in this case. Docket No. 157. In a published opinion, the Ninth Circuit reversed the judgment and held that defendant was entitled to qualified immunity, and vacated the fee order in light of the disposition on the merits. *A.D. v. Markgraf*, 636 F.3d 555 (9th Cir. 2011). On April 20, 2011, plaintiffs filed a petition for rehearing en banc. On May 10, 2011, the Ninth Circuit directed defendant to file a response. Docket No. 158. The Ninth Circuit granted plaintiffs leave to file a reply, which plaintiffs filed on June 12, 2011. Docket No. 160.

On April 11, 2012, the Ninth Circuit withdrew its original opinion and issued an order directing supplemental briefing. Docket No. 161. The Ninth Circuit directed the parties to answer two questions:

2

(1) "How should the qualified immunity framework be applied based on the jury's finding that Defendant-Appellant violated Plaintiffs-Appellees' Fourteenth Amendment right to a familial relationship?"; and (2) "Does the subjective requirement in this case that the Defendant-Appellant act with a purpose to harm unrelated to a legitimate law enforcement objective in order to violate the Plaintiffs-Appellees' Fourteenth Amendment right to familial association affect the qualified immunity inquiry?" *Id*. The parties filed supplemental briefs, and on September 18, 2012, the Ninth Circuit held a second argument on the appeals.

On April 3, 2013, the Ninth Circuit issued a new published opinion affirming this Court's denial of defendant's motion for judgment as a matter of law. *See A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013). The Court of Appeals held that there was sufficient evidence to support the jury's verdict that defendant shot Karen Eklund with a purpose to harm unrelated to a legitimate law enforcement objectives, and therefore that defendant was not entitled to qualified immunity.

The Ninth Circuit also reversed and remanded the fee award "so that the district court may consider the amounts of Markgraf's settlement offers in determining a reasonable fee . . . in light of an intervening change in Ninth Circuit law holding that Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success." *Id*. at 460-61 (citing *In re Kekauoha–Alisa*, 674 F.3d 1083, 1093-94 (9th Cir. 2012); *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011)). The court further instructed:

> On remand, the district court has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as much or as little weight as it sees fit. *See Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir.2009) (acknowledging that settlement offers are "clearly only one factor to be considered in the award of fees," and that the district court "is also free to reject such evidence as not bearing on success"); *cf. In re Kekauoha-Alisa*, 674 F.3d at 1093-94; *Ingram*, 647 F.3d 925 (adopting *Lohman*'s holding that Federal Rule of Evidence 408 does not bar consideration of settlement offers when making attorneys' fee awards). It is not our place to opine as to how that discretion should be exercised.

*Id*. at 461.

The plaintiffs filed a motion to transfer consideration of attorneys' fees for the appeal to this Court. The Ninth Circuit granted the motion as to the merits appeal, but ruled that plaintiffs are not

3

entitled to fees for the appeal of the fee award.

In August 2013, defendant filed a petition for writ of certiorari in the United States Supreme Court. On November 4, 2013, the Supreme Court denied the petition. *Markgraf v. A.D.*, No. 13-365, 2013 WL 5297886 (U.S. Nov. 4, 2013).

**DISCUSSION**

Plaintiffs seek attorneys' fees and expenses, broken down as follows: (1) the original fee award pre-appeal of $559,861.45 (merits fees of $489,631.00; merits expenses of $6,402.59; fees for original fee petition of $63,490.00; and fees expenses of $337.86); (2) merits appeal work in the amount of $288,080.00; (3) work on the supplemental fee petition in the amount of $57,428.90 (fees of $57,285.00 and expenses of $143.90); (4) post-appeal merits work of $580.00; and (5) fees related to defendant's petition for certiorari to the United States Supreme Court in the amount of $3,012.50. In support of the supplemental fee petition, plaintiffs have incorporated their submissions from the original fee petition, and submitted supplemental declarations from John Scott and Thomas Greerty, Amitai Schwartz, and Moira Duvernay. Mr. Scott and Mr. Greerty were trial counsel and the primary lawyers on the merits appeal until the Ninth Circuit issued its first decision reversing the judgment. Mr. Schwartz initially represented the plaintiffs on the appeal of the fee award, and provided editing and consulting support on the first phase of the merits appeal. After the Ninth Circuit reversed the judgment in this case, Mr. Schwartz took the lead in drafting the petition for rehearing and on the subsequent merits appeal work. Ms. Duvernay is an associate at Mr. Schwartz's office and she worked on both the appeal and the supplemental fee petition. The lawyers' declarations describe their professional experience and their work on this case, and they have submitted summaries of the time they spent on this case, as well as a listing of expenses incurred. In support of the hourly rates sought, plaintiffs have also submitted the declaration of Steven Mayer, a director of the firm of Howard, Rice, Nemerovski, Canady, Falk & Rabin, evidence regarding hourly rates charged by Bay Area lawyers, and recent court decisions awarding Bay Area lawyers fees.

Under 42 U.S.C. § 1988(b), the Court has discretion to award plaintiffs their reasonable attorneys' fees and expenses. Reasonable attorneys' fees are determined by the "lodestar method,"

4

which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In determining the appropriate number of hours to be included in a lodestar calculation, the Court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Id*. at 434. "The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

### I. Level of success/consideration of settlement negotiations

In opposition to the supplemental fee petition, defendant argues that the previous fee award should be reduced because plaintiffs' level of success at trial "never came close to exceeding any of their pretrial demands or the settlement negotiations." Docket No. 181 at 4:6-7. Defendant relies on the declaration of Tom Blake, who represented defendant throughout the pretrial proceedings and at trial. Mr. Blake describes the parties' negotiations and settlement demands made by plaintiffs, and states that the parties discussed settlement in the range of $100,000 to $300,000, and that Mr. Scott "indicated an interest" in a settlement of $75,000 per plaintiff and $100,000 in attorneys' fees. Blake Decl. ¶¶ 5-6. It is undisputed that defendant never made plaintiffs a settlement offer. However, defendant argues that plaintiffs never agreed to a "potential settlement" that was more than double the amount that each plaintiff received at trial, and thus their lodestar should be reduced to reflect their limited monetary success.

Plaintiffs respond that the Court should exercise its discretion and give no weight to amounts discussed in the settlement negotiations for two reasons. First, plaintiffs argue that this Court has already determined that plaintiffs achieved significant nonmonetary success vindicating their constitutional rights and serving the public purpose of deterring the unlawful use of deadly force, and they cite numerous cases for the proposition that the lodestar should not be reduced when civil rights plaintiffs achieve modest monetary success but significant nonmonetary success. Second, plaintiffs argue that the Court should not reduce the lodestar on account of the parties' settlement negotiations because defendant never made a settlement offer. Plaintiffs note that the Ninth Circuit's instructions on remand were explicit: "We reverse and remand the fee award so that the district court may consider

5

the amounts of Markgraf's *settlement offers* in determining a reasonable fee." *A.D.*, 712 F.3d at 460 (emphasis added). Plaintiffs argue that defendant cannot now claim that this case could have settled for an amount that he never offered, and they argue that the cases cited in the Ninth Circuit's decision and relied on by defendant are all distinguishable because they involved plaintiffs who rejected settlement offers. *See Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) (plaintiff rejected three settlement offers, one of which was six times the amount ultimately awarded by the jury); *see also In re Kekauoha-Alisa*, 674 F.3d at 1094 ("Therefore, the bankruptcy court may consider evidence of a settlement offer to the degree such evidence is relevant to the calculation of reasonable attorneys' fees under Hawaii law."); *Ingram*, 647 F.3d at 927 (plaintiff rejected $30,000 settlement offer, leading to further litigation, and ultimately settled for $30,000).

The Court exercises its discretion and concludes that amounts discussed in the parties' settlement negotiations do not bear on an evaluation of plaintiffs' success in this case. *See Lohman*, 574 F.3d at 169 (acknowledging that settlement offers are "clearly only one factor to be considered in the award of fees," and that the district court "is also free to reject such evidence as not bearing on success"). As the Court found in its original fee order, plaintiffs fully prevailed on their constitutional claims at trial and the verdict serves the important public purpose of deterrence. "Success is measured not only by the amount of the recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales v. City of San Rafael*, 96 F.3d 357, 365 (9th Cir. 1996). The Ninth Circuit has expressed "difficulty imagining a more important issue than the legality of state-sanctioned force resulting in death. It is obviously of supreme importance to anyone who might be subject to such force. But it is also of great importance to a law enforcement officer who is placed in a situation where deadly force may be appropriate." *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1062 (9th Cir. 2010) (affirming attorneys' fee award in wrongful death case where the jury found in favor of the plaintiff but awarded only nominal damages). Because this case was about much more than money damages, the Court finds that the parties' settlement negotiations are not probative of evaluating plaintiffs' success at trial.

Further, to the extent that the Court assesses success by looking at plaintiffs' monetary recovery, the parties' settlement negotiations are not helpful because defendant did not actually make a settlement

6

offer, and thus defendant's assertion that this case could have settled for $75,000 per plaintiff is entirely speculative.

Accordingly, the Court reaffirms the previous pre-appeal fee award in its entirety. Interest is awarded on the original award of merits fees and expenses from May 8, 2009, the date of the judgment, and on the fees for the fee petition from November 10, 2009, when the order awarding fees was filed.

## II. Merits Appeal

Plaintiffs seek $288,080.00 for time spent on the merits appeal. Defendant objects to counsel's requested hourly rates, and contends that some of the time spent was unnecessary and duplicative.

### A. Hourly rates

A court awarding attorney fees must look to the prevailing market rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Bell v. Clackamas County*, 341 F.3d 858, 860 (9th Cir. 2003). Plaintiffs seek to be compensated at their 2013 hourly rates for the time spent on the merits appeal beginning in 2010. Plaintiffs seek $725 per hour for Mr. Greerty, Mr. Scott and Mr. Schwartz, and $425 per hour for Ms. Duvernay. In 2009, the Court awarded $600 per hour for each of the senior attorneys, and $300 per hour for Ms. Duvernay.[1] Mr. Greerty has 34 years experience practicing law, Mr. Scott has 37 years experience, Mr. Schwartz has over 40 years experience, and Ms. Duvernay has 9 years of experience.

Defendant contends that it is unreasonable to award 2013 rates for work largely performed in 2010 and 2011. However, the Supreme Court has held that an enhancement for delay in payment, where appropriate, is part of calculating a "reasonable" fee under Section 1988:

> Clearly, compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise – is within the contemplation of the statute.

---

[1] By reaffirming the previous fee award, the Court awards fees for that portion of counsel's work at the 2009 rates.

7

1  *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also Bell*, 341 F.3d at 868 (citing *Jenkins* and
2  holding that "[t]he court may also award rates at an attorney's current rate where appropriate to
3  compensate for the lengthy delay in receiving payment"). Here, the Court finds it appropriate to award
4  2013 rates for the merits appeal work because of the substantial delay in payment.

5  Defendant also contends that the 2013 rates sought are unreasonable because those rates are
6  twenty and forty percent above the 2009 rates. Defendant cites the Laffey Matrix, the formulaic
7  attorneys' fees schedule used in the District of Columbia, to argue that "reasonable rate increases do not
8  exceed ten to fifteen percent over a period of four years." Docket No. 181 at 9:10-12. However, the
9  Ninth Circuit has questioned the relevance of the Laffey Matrix to determining a reasonable rate in the
10 Bay Area. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("But just
11 because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound
12 basis for determining rates elsewhere, let alone in a legal market 3,000 miles away. It is questionable
13 whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from
14 the nation's capital.").

15 In any event, the question is not whether the percentage increase from 2009 to 2013 is too great,
16 but rather whether the 2013 rates sought are reasonable and within the prevailing market rates. Plaintiffs
17 have shown that those rates are reasonable for attorneys with similar or less experience than plaintiffs'
18 counsel. *See* Supp. Mayer Decl. ¶¶ 2-6 (1974 law school graduate practicing at Arnold & Porter, LLP
19 in San Francisco charges $910 per hour; current hourly rates for attorneys who graduated between 1972
20 and 1978 range between $800-$875; standard rate for 2004 graduate is $625 per hour); Supp. Req. for
21 Judicial Notice, Ex. 4 (exhibit to declaration filed in *Apple Inc. v. Samsung Elec. Co.*, Case No. 11-cv-
22 01846-LHK (PSG), showing that "average partner rate" at Quinn Emanuel Urquhart & Sullivan, LLP
23 is $821 per hour and "average associate rate" is $448 per hour). The requested rates are also in line with
24 those awarded in recent fee awards, and indeed some of those fee awards show that the rates sought are
25 comparable to market rates approved for work performed in 2010 and 2011, and earlier. *See Recouvreur*
26 *v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (approving $700 hourly rate for public interest
27 lawyer with 20 years of experience); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011)
28 (approving 2010 rates of $700 per hour for 1978 and 1980 law graduates and between $325-$480 for

8

attorneys graduating between 2003-2008); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2010) (finding reasonable $700 hourly rate for civil rights attorney practicing since 1982); *see also Prison Legal News*, 608 F.3d 455 (holding district court did not abuse its discretion in awarding 2008 hourly rates of $875 for a partner, $700 for an attorney with 23 years of experience, and $425 for a 2003 law graduate).

### B. "Unnecessary or redundant" time

Next, defendant challenges as unnecessary or redundant the following time spent on the merits appeal: (1) time spent by Scott, Greerty and Schwartz reviewing the excerpts of record; (2) time spent by Schwartz and Greerty editing the original answering brief written by Scott; and (3) time spent by Scott and Greerty preparing for the original appellate argument and by Schwartz preparing for the supplemental oral argument. Defendant argues that some of this "redundant" time was expended as a result of the switch from Scott to Schwartz as the lead counsel handling the merits appeal (such as the time spent reviewing the excerpts of record), and other time is simply excessive and unnecessary (such as the time spent editing and preparing for oral argument).

"Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). As the Ninth Circuit has instructed,

> The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work, but determining whether work is unnecessarily duplicative is no easy task. When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's necessary duplication; it is inherent in the process of litigating over time. Here, there was a previous appeal (of the district court's grant of summary judgment) which would have added to the delay and rendered much of the research stale. One certainly expects some degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free.
>
> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more

9

of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The issues in this case were difficult and complex, and litigation of the appeal was especially complicated. The decision to change lead counsel after the initial loss on appeal was a strategic choice that brought a fresh perspective to the issues raised on rehearing and in the supplemental briefing. After the Ninth Circuit's initial 3-0 decision reversing the judgment, plaintiffs faced the formidable task of persuading the Ninth Circuit to reconsider its decision. That plaintiffs were successful in doing so, resulting in a 3-0 published decision affirming the judgment, validates plaintiffs' counsel's decisions about how to staff and litigate the appeal. The Court also notes that Schwartz and Duvernay do not seek to be compensated for all of the time they spent on the merits appeal. *See* Second Supp. Schwarz Decl. ¶¶17-18. Defendant has not shown that any of the work performed was unnecessary, and considering the complexity of this case it is reasonable that plaintiffs' counsel would need to ensure that they were familiar with the district court record, review and edit pleadings prepared by others, and prepare assiduously for important oral arguments. The Court is satisfied that the fees requested are reasonable and justified by the results obtained, and finds it inappropriate and unnecessary to speculate about whether different staffing decisions would have led to the same results at a lower cost.

Accordingly, the Court grants plaintiffs' request for fees for the merits appeal, and interest is awarded on the merits appeal fees from May 24, 2013, the date the mandate of the Court of Appeals was filed in this Court. Docket No. 169.

### III. Supplemental fee petition

Plaintiffs seek $57,428.90 in fees and expenses incurred in litigating the supplemental fee petition. Defendant generally objects that the amount of time spent on the supplemental fee petition "appears distorted" because counsel spent at as much time on the supplemental fee petition as Scott and Greerty spent on the merits appeal. Defendant does not identify any specific time that he contends was unnecessary or unreasonable.

As an initial matter, the Court notes that the vast majority of the time spent on the supplemental fee petition was performed by Ms. Duvernay, the attorney with the lowest hourly rate. The Court also

finds that simply comparing the time spent on the fee motion and time spent on one part of the merits appeal does not establish that the time spent on the supplemental fee motion was excessive. *See Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1022 (N.D. Cal. 1989) (rejecting as unpersuasive "summary opposition" that fees on fees were excessive based solely on comparison to merits time because "[r]igid comparisons with the amount of fees for the merits shed little light" on determining "what is a reasonable number of hours in light of the issues and tasks involved."). The Court finds that the time spent litigating the supplemental fee petition was reasonable because plaintiffs have the burden of supporting the rates sought and time spent, and they were required to review pertinent legal authority, obtain declarations, gather and present time records, research current hourly rates for Bay Area attorneys, and prepare the motion papers. The Court finds it noteworthy that defendant did not identify any particular time spent as excessive or unnecessary, instead relying on a blanket objection. Further, due to defendant's tenacious litigation of the fee issue, plaintiffs' counsel was required "to expend significantly more time on fee issues than would have otherwise been required." *Id*.

## IV.   **Other fees and expenses**

Plaintiffs seek post-appeal merits work of $580.00, and fees related to defendant's petition for certiorari to the United States Supreme Court in the amount of $3,012.50. Defendant does not object to these amounts, and the Court finds that these fees are reasonable and recoverable.

///

///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiffs' motion for attorneys' fees and expenses as follows: (1) the original fee award pre-appeal of $559,861.45 (merits fees of $489,631.00; merits expenses of $6,402.59; fees for original fee petition of $63,490.00; and fees expenses of $337.86); (2) merits appeal fees in the amount of $288,080.00; (3) fees and expenses for the supplemental fee petition in the amount of $57,428.90; (4) post-appeal merits work of $580.00; and (5) fees related to defendant's petition for certiorari to the United States Supreme Court in the amount of $3,012.50.

**IT IS SO ORDERED.**

Dated: November 27, 2013

SUSAN ILLSTON
United States District Judge